PEOPLE v GAYHEART

Docket No. 282690. Submitted April 8, 2009, at Grand Rapids. Decided July 30, 2009, at 9:00 a.m.

A jury in the St. Joseph Circuit Court, Paul E. Stutesman, J., convicted Dannie Gayheart of premeditated murder and felony murder, alternatively predicated on the alleged underlying felonies of kidnapping and larceny, and the defendant was sentenced to life imprisonment without parole. The defendant appealed, alleging that the trial court lacked statutory jurisdiction to try him because there was insufficient proof that the crime took place in Michigan since the victim's body was discovered in Indiana. The defendant also alleged a violation of his right to due process.

The Court of Appeals held:

1. The jury was properly instructed regarding the elements of both kidnapping and larceny.

2. A trial court in a case where territorial jurisdiction is placed in issue must initially decide as a question of law whether the facts to be offered by the prosecution, if proven, would be legally adequate to confer jurisdiction under MCL 762.2. Once this initial gatekeeping determination has been made, and assuming that the exact location of a boundary line is not at issue in the case, the trier of fact must next determine as a factual matter whether the alleged act, consequence, or other condition that would confer territorial jurisdiction under MCL 762.2 did in fact occur within the state of Michigan. The prosecution must prove to the trier of fact beyond a reasonable doubt that the alleged act, consequence, or other condition that would confer territorial jurisdiction under MCL 762.2 did in fact occur within the state of Michigan. The fact that the Legislature has not defined the existence of territorial jurisdiction as an "element" of a criminal offense does not compel a contrary conclusion.

3. The existence of territorial jurisdiction may be proven by circumstantial evidence.

4. Although the trial court did not make an initial determination whether the evidence to be presented by the prosecution, if

proven, would be sufficient to confer territorial jurisdiction under MCL 762.2, a review de novo by the Court of Appeals shows that the question should have been answered in the affirmative.

5. There was sufficient evidence for the jury to find beyond a reasonable doubt that the defendant committed at least one element of premeditated murder and one element of felony murder in the state of Michigan. Therefore, even though the evidence suggested that the fatal blows were struck in Indiana and the victim's body was found there, the trial court had territorial jurisdiction under MCL 762.2(1)(a) and (2)(a) to try the defendant under the laws of Michigan.

6. It does not appear that the exercise of territorial jurisdiction exclusively under MCL 762.2(1)(d), which confers jurisdiction where the victim of the offense resides in Michigan at the time the criminal offense is committed, would withstand the United States Supreme Court's holding that nominal residence, standing alone, is inadequate to justify the choice of one state's law over that of another. However, the exercise of territorial jurisdiction under MCL 762.2(1)(a) in this case was constitutional because it was proven that at least one essential element of both premeditated murder and felony murder was committed within Michigan. There was a significant contact or significant aggregation of contacts so that the application of Michigan's criminal law was neither arbitrary nor fundamentally unfair and the defendant's conduct directly violated the peace, tranquility, and laws of Michigan, establishing a sufficient nexus so as to permit the constitutional exercise of territorial jurisdiction in conformity with constitutional due process.

7. Venue was proper in St. Joseph County because an element of both premeditated murder and felony murder was committed there.

8. The trial court did not abuse its discretion by admitting into evidence highly probative photographs of the victim. The probative value of the photographs was not outweighed by the danger of undue prejudice.

Affirmed.

1. CRIMINAL LAW — TERRITORIAL JURISDICTION.

A trial court in a criminal case where territorial jurisdiction is placed in issue must initially decide as a question of law whether the facts to be offered by the prosecution, if proven, would be legally adequate to confer jurisdiction under MCL 762.2; next, where the exact location of a boundary line is not at issue, the trier of fact must determine as a factual matter that the prosecution has proven beyond a reasonable doubt that the alleged act, conse-

quence, or other condition that would confer territorial jurisdiction under the statute did in fact occur within the state of Michigan.

2. CRIMINAL LAW — TERRITORIAL JURISDICTION — EVIDENCE — CIRCUMSTANTIAL EVIDENCE.

The existence of territorial jurisdiction over a criminal matter under MCL 762.2 may be proven by circumstantial evidence.

3. CONSTITUTIONAL LAW — DUE PROCESS — JURISDICTION.

The Due Process Clause forbids a state from applying its own substantive or criminal law to a transaction, occurrence, or crime in which the state has insufficient interests or with which the state has insufficient contacts; a state may constitutionally apply its own law if the state has a significant contact or significant aggregation of contacts, creating state interests, so that application of its law is neither arbitrary nor fundamentally unfair.

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, *Douglas K. Fisher*, Prosecuting Attorney, and *William E. Molner*, Assistant Attorney General, for the people.

*Bennett Law Office* (by *P. E. Bennett*) for the defendant.

Before: SAAD, C.J., and JANSEN and HOEKSTRA, JJ.

JANSEN, J. Defendant appeals by right his jury-trial conviction of first-degree murder,[1] for which he was sentenced to life imprisonment without parole. We affirm.

I

The evidence presented at trial established that the victim, Rosemary Reinel, had lived in an apartment

---

[1] The jury convicted defendant of both premeditated murder, MCL 750.316(1)(a), and felony murder, MCL 750.316(1)(b).

complex in St. Joseph County, Michigan, since 2001. Defendant briefly lived in the same apartment complex with a roommate. At some point, the victim became interested in moving to Florida. Defendant apparently learned of this and asked the victim to allow him to drive with her in her car to Florida. Defendant wanted to go to Florida so that he could visit Teresa Mock, a woman with whom he had been romantically involved in the past. The victim initially agreed to allow defendant to drive with her to Florida, but later changed her mind when she learned that defendant was on parole for an unrelated offense.

The victim was last seen on September 20, 2005. The police found the victim's white automobile in a Florida parking lot on September 29, 2005. Defendant was then arrested in Florida after breaking into Mock's home.

On November 1, 2005, the victim's body was discovered in a cornfield in northern Indiana. The cornfield was less than 100 feet from the boundary between Michigan and Indiana. A witness testified that she had seen a white car similar to the victim's automobile parked in a lane leading to the cornfield in late September 2005. The witness remembered the event as unusual because she had never before seen an automobile parked in that lane. A friend of the victim identified certain items that were found near the victim's body as personal property of the victim, which had been stored in the victim's car. A forensic entomologist testified that his observations and calculations indicated that the victim had likely died between September 14, 2005, and September 21, 2005. Cellular phone records indicated that defendant had placed a phone call from the vicinity of the northern Indiana cornfield on the morning of September 20, 2005.

Defendant's roommate testified that defendant had left the apartment "real early" on the morning of

September 20, 2005, and that defendant appeared "agitated" when he returned home at about noon that day. When defendant returned, his roommate saw him washing and cleaning a pair of Channellock pliers. Defendant's roommate testified that "what [defendant] was wiping off was red" and that "there looked like pieces of hair" on the pliers. Defendant left the apartment shortly thereafter, but later called his roommate and asked him to "lie for him to the police." When the roommate saw defendant again a day or two later, defendant had "a whole wad of money," which was "quite . . . big" and consisted of "hundreds, fifties, [and] twenties."[2] Defendant's roommate never again saw the pair of Channellock pliers.

A maintenance man who worked for the apartment complex where defendant lived testified that sometime after September 20, 2005, he realized that a large pair of Channellock pliers was missing or had been stolen from a utility room on the premises. No one on the apartment complex maintenance staff could account for what had happened to the pliers, which were never seen again.

It was the prosecution's theory that defendant had taken the missing Channellock pliers and had used them to kill the victim by inflicting several blows to her head. Although the victim's body was partially decomposed when it was found, the evidence showed that she had sustained serious head trauma. On the basis of the pattern of skull fractures, it was determined that there had likely been between seven and nine individual blows to the head with a blunt object.

The jury was properly instructed with respect to the elements of both premeditated murder and felony mur-

---

[2] A bank employee testified that the victim had withdrawn $2,970 in cash on the morning of September 16, 2005.

der.[3] The jury was further instructed, with respect to both charges, that "[i]n this case the prosecutor must also prove beyond a reasonable doubt that [the victim] was a resident of the State of Michigan, St. Joseph County, at the time of her death, and that the Defendant committed some act toward the commission of the crime while within the State of Michigan, County of St. Joseph . . . ." The verdict form contained in the lower court file indicates that the jury returned verdicts of guilty on both charges.

## II

Defendant argues that because the victim's body was discovered in Indiana, there was insufficient proof that the crime took place in Michigan. He contends that the trial court was without statutory jurisdiction to try him. He also contends that his trial violated due process. As noted previously, the jury convicted defendant of both premeditated murder and felony murder. For the reasons that follow, we conclude that territorial jurisdiction existed under MCL 762.2 to try defendant for both charged offenses in this case. We further conclude that defendant's trial did not violate the constitutional guarantee of due process.

## A

We review de novo issues of constitutional and statutory interpretation, as well as all other questions of law. *People v McCuller*, 479 Mich 672, 681; 739 NW2d 563 (2007); *People v Katt*, 468 Mich 272, 278; 662 NW2d 12 (2003).

---

[3] The charge of felony murder was alternatively predicated on the alleged underlying felonies of kidnapping and larceny. The jury was properly instructed on the elements of both kidnapping and larceny.

B

Relying in part on *People v Blume*, 443 Mich 476; 505 NW2d 843 (1993), defendant argues that the state of Michigan was without authority to exercise territorial jurisdiction with respect to the murder at issue in this case because the crime occurred in Indiana and its detrimental effects were not intended to be felt in Michigan. "The authority of every tribunal is necessarily restricted by the territorial limits of the State in which it is established," and "[a]ny attempt to exercise authority beyond those limits" constitutes "an illegitimate assumption of power." *Stewart v Eaton*, 287 Mich 466, 474; 283 NW 651 (1939). However, nearly 100 years ago, the United States Supreme Court announced that "[a]cts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a State in punishing the cause of the harm . . . ." *Strassheim v Daily*, 221 US 280, 285; 31 S Ct 558; 55 L Ed 735 (1911). Until 2002, the common-law rule in Michigan, which drew heavily on the United States Supreme Court's decision in *Strassheim*, was that the state could not exercise territorial jurisdiction over criminal conduct committed in another state unless that conduct was intended to have, and did in fact have, "a detrimental effect within the state." *Blume*, 443 Mich at 477. The *Blume* Court observed that "[u]nlike some states, Michigan has not enacted legislation generally defining the reach of its criminal statutes." *Id.* at 480 n 7.

The Legislature responded in 2002 by enacting MCL 762.2, which provides:

> (1) A person may be prosecuted for a criminal offense he or she commits while he or she is physically located within this state or outside of this state if any of the following circumstances exist:

(a) He or she commits a criminal offense wholly or partly within this state.

(b) His or her conduct constitutes an attempt to commit a criminal offense within this state.

(c) His or her conduct constitutes a conspiracy to commit a criminal offense within this state and an act in furtherance of the conspiracy is committed within this state by the offender, or at his or her instigation, or by another member of the conspiracy.

(d) A victim of the offense or an employee or agent of a governmental unit posing as a victim resides in this state or is located in this state at the time the criminal offense is committed.

(e) The criminal offense produces substantial and detrimental effects within this state.

(2) A criminal offense is considered under subsection (1) to be committed partly within this state if any of the following apply:

(a) An act constituting an element of the criminal offense is committed within this state.

(b) The result or consequences of an act constituting an element of the criminal offense occur within this state.

(c) The criminal offense produces consequences that have a materially harmful impact upon the system of government or the community welfare of this state, or results in persons within this state being defrauded or otherwise harmed.

It is well settled that the Legislature has the power to alter or abrogate the common law. Const 1963, art 3, § 7; *People v Lively*, 470 Mich 248, 252; 680 NW2d 878 (2004). The language of MCL 762.2 has broadened the scope of Michigan's territorial jurisdiction over criminal matters, significantly expanding upon the common-law rule explained in *Blume*. For instance, pursuant to MCL 762.2(1)(a) and (2)(a), Michigan now has statutory territorial jurisdiction "over any crime

where any act constituting an element of the crime is committed within Michigan," *People v King*, 271 Mich App 235, 243; 721 NW2d 271 (2006), even if there is no indication that the accused actually intended the detrimental effects of the offense to be felt in this state.

C

The elements of premeditated murder are (1) an intentional killing of a human being (2) with premeditation and deliberation. MCL 750.316(1)(a); *People v Unger*, 278 Mich App 210, 223, 229; 749 NW2d 272 (2008); *People v Marsack*, 231 Mich App 364, 370-371; 586 NW2d 234 (1998). The elements of felony murder are (1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result, (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in MCL 750.316(1)(b). *People v Smith*, 478 Mich 292, 318-319; 733 NW2d 351 (2007); *People v Carines*, 460 Mich 750, 758-759; 597 NW2d 130 (1999). The charge of felony murder in this case was based alternatively on the alleged predicate felonies of larceny and kidnapping, both of which are specifically enumerated in MCL 750.316(1)(b). After reviewing the record, we conclude that the jury was properly instructed on the elements of both kidnapping and larceny. It is axiomatic that jurors are presumed to have followed their instructions. *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998); *Unger*, 278 Mich App at 235.

D

At the outset, we note that the prosecution urges us to hold that the existence of territorial jurisdiction

under MCL 762.2 is a pure question of law to be decided by the trial court. We conclude that the trial court must decide as an initial matter of law whether a particular alleged act, consequence, or other condition, if proven beyond a reasonable doubt to have occurred within this state, would be legally sufficient to confer jurisdiction under MCL 762.2. However, we conclude that it is for the trier of fact to decide as a question of fact whether the alleged act, consequence, or other condition actually occurred in Michigan.

Whether a statute applies is generally a question of law, *Alex v Wildfong*, 460 Mich 10, 21; 594 NW2d 469 (1999), as is the proper interpretation and application of a statute, *People v Coutu*, 459 Mich 348, 353; 589 NW2d 458 (1999). Therefore, we conclude that it is for the trial court to initially decide as a question of law whether a particular alleged act, consequence, or other condition would be legally sufficient to confer territorial jurisdiction. Stated another way, the trial court must exercise an initial gatekeeping function by first determining whether the facts to be offered by the prosecution, if proven, would be legally adequate to confer jurisdiction under MCL 762.2.

Once this initial gatekeeping determination has been made, however, and assuming that the exact location of a boundary line is *not* at issue in the case,[4]

---

[4] We stress that the exact location of the boundary line between Michigan and Indiana *was not* at issue in this case. When, on the other hand, the exact location of a boundary line *is* at issue, the trier of fact must determine whether the particular geographic situs set forth in the information or identified through the proofs at trial is, in fact, located within the boundaries of the state of Michigan. Although the existence of jurisdiction is generally a question of law, *People v Laws*, 218 Mich App 447, 451; 554 NW2d 586 (1996), "the boundary of a State, when a material fact in the determination of the extent of the jurisdiction of a court, is not a simple question of law," *United States v Jackalow*, 66 US

the trier of fact must next determine as a factual matter whether the alleged act, consequence, or other condition that would confer territorial jurisdiction under MCL 762.2 did in fact occur within the state of Michigan. The clear majority rule in this country is to require the trier of fact to find beyond a reasonable doubt that the alleged act, consequence, or other condition that would confer jurisdiction has in fact occurred within the territorial jurisdiction of the court when the matter is placed in issue. See, e.g., *State v Butler*, 353 Md 67, 79; 724 A2d 657 (1999) (holding that "when evidence exists that the crime may have been committed outside Maryland's territorial jurisdiction and a defendant disputes the territorial jurisdiction of the Maryland courts to try him or her, the issue of where the crime was committed is fact-dependent and thus for the trier of fact"); *State v Willoughby*, 181 Ariz 530, 538; 892 P2d 1319 (1995) (holding that "[i]n the very rare case in which jurisdiction is legitimately in issue because of contradicting jurisdictional facts, Arizona's territorial jurisdiction must be established beyond a reasonable doubt by the

---

484, 487; 17 L Ed 225 (1861). While the *description* of a boundary line between two states is a matter of law for the trial court rather than for the jurors, "the application of the evidence in the ascertainment of [the boundary] as thus described and interpreted, with a view to its location and settlement, belongs to the jury." *Id.*; see also *People v Hillman*, 246 NY 467, 474; 159 NE 400 (1927). Thus, when the matter is in issue, all the testimony and evidence concerning the exact, physical location of a boundary line "should be submitted to [the trier of fact] under proper instructions to find the fact." *Jackalow*, 66 US at 488. Indeed, it has long been the law in Michigan that when the exact location of a boundary line is placed in issue by the proofs, "the exact place where [a boundary] line . . . runs is a question of fact rather than of law," and that the matter is therefore properly submitted to the jury. *Wilmarth v Woodcock*, 66 Mich 331, 334; 33 NW 400 (1887). Like any other controverted factual issue in a criminal matter, the exact location of a state's boundary line in such cases must be found beyond a reasonable doubt. See *In re Winship*, 397 US 358, 364; 90 S Ct 1068; 25 L Ed 2d 368 (1970).

jury"); *State v Liggins*, 524 NW2d 181, 184-185 (Iowa, 1994) (observing that, if placed in issue by the proofs, the issue of territorial jurisdiction "is properly submitted at trial" and that "[t]he State is required to prove territorial jurisdiction beyond a reasonable doubt"); *People v McLaughlin*, 80 NY2d 466, 472; 591 NYS2d 966; 606 NE2d 1357 (1992) (holding that "territorial jurisdiction must be proven beyond a reasonable doubt"); *Lane v State*, 388 So 2d 1022, 1028-1029 (Fla, 1980) (holding that the "territorial jurisdictional issue is a factual determination which is within the province of the jury to resolve under appropriate instructions" and that "[w]e agree with the weight of authority that th[e] territorial jurisdictional issue must be proved beyond a reasonable doubt"); *McKinney v State*, 553 NE2d 860, 863 (Ind App, 1990) (observing that "the State must prove territorial jurisdiction beyond a reasonable doubt" to the trier of fact); *Sheeran v State*, 526 A2d 886, 890 (Del, 1987) (holding that "the State must establish that a legal situs of the offense was in Delaware" and that the reviewing court is required to determine whether "any rational trier of fact could have found [the existence of territorial jurisdiction] beyond a reasonable doubt"); *State v Beall*, 729 SW2d 270, 271 (Tenn App, 1986) (holding that "[t]he trial judge correctly instructed the jury that in resolving whether the crime occurred in Tennessee they must be persuaded beyond a reasonable doubt from the evidence introduced on that issue"); *State v Svenson*, 104 Wash 2d 533, 542; 707 P2d 120 (1985) (stating that territorial jurisdiction "must be proved beyond a reasonable doubt and the burden of proof is on the State"); *People v Cullen*, 695 P2d 750, 751 (Colo App, 1984) (stating that "[w]here determination of jurisdiction depends upon a resolution of disputed facts, the issue must be submitted to the jury with an appropriate instruction"); *People*

*v Holt*, 91 Ill 2d 480, 492; 440 NE2d 102 (1982) (holding that, in the absence of a statutory presumption that a murder occurred in Illinois when the body is found inside the state, "[j]urisdiction must be proved beyond a reasonable doubt"); *State v Batdorf*, 293 NC 486, 494; 238 SE2d 497 (1977) (holding that "when jurisdiction is challenged, as here, the State must carry the burden and show beyond a reasonable doubt that North Carolina has jurisdiction to try the accused"); *State v Baldwin*, 305 A2d 555, 559 (Me, 1973) (observing that "the State has the burden of proving beyond a reasonable doubt that the criminal conduct it seeks to vindicate occurred in the State of Maine"); *Commonwealth v Bighum*, 452 Pa 554, 559; 307 A2d 255 (1973) (observing that "in those infrequent cases where jurisdiction depends upon the resolution of disputed facts, it is within the province of the jury to resolve the issue under proper instructions, and failure to give such instructions may constitute reversible error").

We adopt this majority rule and hold that when the matter of territorial jurisdiction is placed in issue in a given case—and assuming that the trial court has determined that the facts to be offered by the prosecution, if proven, would be legally adequate to confer jurisdiction under MCL 762.2—the prosecution must prove to the trier of fact beyond a reasonable doubt that the alleged act, consequence, or other condition that would confer territorial jurisdiction under MCL 762.2 has in fact occurred within the state of Michigan. Requiring the trier of fact to find beyond a reasonable doubt that one of the statutory jurisdiction-conferring acts, consequences, or conditions has occurred within this state is consistent with the general rule that all controverted factual issues in a criminal case must be found beyond a reasonable doubt. See *In re Winship*, 397 US 358, 364; 90 S Ct 1068; 25 L Ed 2d 368 (1970).

And the mere fact that the Legislature has not defined the existence of territorial jurisdiction as an "element" of a criminal offense does not compel a contrary conclusion. See *Apprendi v New Jersey*, 530 US 466, 494-496; 120 S Ct 2348; 147 L Ed 2d 435 (2000) (observing that a sentencing factor, which increases the punishment for a crime beyond the prescribed statutory maximum, must be proven to the trier of fact beyond a reasonable doubt even though the legislature had not defined the factor as an "element" of the offense).[5]

We find further support for our holding in this regard by looking to Michigan's venue jurisprudence. To be sure, territorial jurisdiction and venue are two different concepts. See 21 Am Jur 2d, Criminal Law, § 461, p 588; see also *McLaughlin*, 80 NY2d at 471. "[J]urisdiction

---

[5] Although some courts do not consider the existence of territorial jurisdiction to be an actual element of the criminal offense, see, e.g., *Butler*, 353 Md at 79 n 5; *Willoughby*, 181 Ariz at 538; *Baldwin*, 305 A2d at 558, other courts treat territorial jurisdiction as an essential element of the crime itself, see, e.g., *Liggins*, 524 NW2d at 184; *Sheeran*, 526 A2d at 890. We think the better rule is *not* to treat territorial jurisdiction as an essential element of the crime because Michigan has no statute expressly defining territorial jurisdiction as an essential element of a criminal offense. Cf. Model Penal Code (ULA), § 1.13(9)(e), p 91 (defining "jurisdiction" as an " 'element of an offense' "). Accordingly, although it is a necessary part of the prosecution's case, and must be proven beyond a reasonable doubt when placed in issue, we conclude that territorial jurisdiction is not an essential element of a criminal offense in this state. We find support for this conclusion in Michigan's venue jurisprudence. See *People v Meredith (On Remand)*, 209 Mich App 403, 408; 531 NW2d 749 (1995) (stating that "while venue is a part of every criminal case that must be proven by the prosecutor, it is not an essential element of a crime"); *People v Swift*, 188 Mich App 619, 620; 470 NW2d 491 (1991) (observing that "[v]enue, although a necessary portion of the prosecution's case, is not an element of a crime"). However, we also recognize that the difference between territorial jurisdiction and the essential elements of a criminal offense is an "elusive distinction" because both territorial jurisdiction and the essential elements must be proven before the state can punish the allegedly criminal conduct. See *Apprendi*, 530 US at 494.

refers to the judicial power to hear and determine a criminal prosecution, whereas venue relates to and defines the place where the prosecution is to be brought or tried." Anno: *Necessity of proving venue or territorial jurisdiction of criminal offense beyond reasonable doubt*, 67 ALR3d, § 2[a], p 991. Indeed, "[v]enue assumes the existence of jurisdiction." 77 Am Jur 2d, Venue, § 2, p 632.

Michigan courts have long held that even though venue is not an essential element of a criminal offense, *People v Meredith (On Remand)*, 209 Mich App 403, 408; 531 NW2d 749 (1995), the determination of venue is a question of fact for the jury, *People v Watson*, 307 Mich 596, 603; 12 NW2d 476 (1943); *People v Belanger*, 120 Mich App 752, 757; 327 NW2d 554 (1982), and the existence of venue "must be proved by the prosecutor beyond a reasonable doubt," *People v Webbs*, 263 Mich App 531, 533; 689 NW2d 163 (2004); see also *People v Fisher*, 220 Mich App 133, 145; 559 NW2d 318 (1996). It would be illogical to conclude that whereas the nonjurisdictional issue of venue must be proven to the trier of fact beyond a reasonable doubt, the more foundational issue of territorial jurisdiction, when in dispute, could be established by a lower or less stringent evidentiary standard.

We also conclude that, like venue, the existence of territorial jurisdiction may be proven by circumstantial evidence. See *People v Andrews*, 360 Mich 572, 575; 104 NW2d 199 (1960); *People v Sparks*, 53 Mich App 452, 460; 220 NW2d 153 (1974). "Circumstantial evidence and reasonable inferences drawn therefrom may be sufficient to prove the elements of a crime." *People v Jolly*, 442 Mich 458, 466; 502 NW2d 177 (1993). Although territorial jurisdiction is not, strictly speaking, an "element" of a crime, we perceive no reason why

circumstantial evidence should not be admissible to prove that one of the statutory jurisdiction-conferring acts, consequences, or conditions of MCL 762.2 has occurred within this state.

Turning to the present case, we note that the trial court did not make an initial legal determination whether the evidence to be presented by the prosecution, if proven, would be sufficient to confer territorial jurisdiction under MCL 762.2. But on review de novo, *Alex*, 460 Mich at 21; *Coutu*, 459 Mich at 353, we conclude that this question clearly should have been answered in the affirmative. Among other things, the prosecution proposed to offer evidence that at least one element of felony murder and at least one element of premeditated murder had been committed within this state. Such evidence certainly would have been sufficient, if proven, to establish territorial jurisdiction under MCL 762.2(1)(a).

Moving to the factual step of the inquiry—whether the alleged jurisdiction-conferring acts, consequences, or conditions in fact occurred within this state—we first conclude that the proofs sufficiently established that defendant premeditated and deliberated the victim's murder while he was physically present in the state of Michigan. The evidence showed that defendant was angry with the victim, who had changed her mind about allowing him to drive with her to Florida. The evidence also showed that defendant made essential preparations for the crime while present in this state, such as acquiring the Channellock pliers used to kill the victim and planning to take the victim across the state line into Indiana. There was more than sufficient evidence from which the jury could have found that defendant planned the murder and selected the murder weapon in Michigan. "Prior planning denotes premeditation and deliberation," *People v Hamp*, 110 Mich App 92, 103;

312 NW2d 175 (1981), and premeditation and deliberation are essential elements of premeditated murder, MCL 750.316(1)(a); *Marsack*, 231 Mich App at 370-371. We conclude that a rational trier of fact could have found beyond a reasonable doubt that defendant committed at least one element of premeditated murder in this state. See *People v Wolfe*, 440 Mich 508, 515-516; 489 NW2d 748 (1992).

Similarly, there was sufficient evidence for the jury to find beyond a reasonable doubt that defendant committed at least one element of felony murder in the state of Michigan. Both larceny and kidnapping are specifically enumerated predicate felonies of felony murder, MCL 750.316(1)(b), and the commission or attempt to commit one of the enumerated predicate felonies is an essential element of the crime of felony murder, *Smith*, 478 Mich at 318-319; *Carines*, 460 Mich at 758-759.

As already noted, the evidence tended to show that defendant planned to remove the victim from this state while he and the victim were still in Michigan. The testimony established that both defendant and the victim were present at the apartment complex in St. Joseph County on the very day of the victim's disappearance. The medical evidence showed that the victim died in the Indiana cornfield, just across the state line, on or about that same day. Pursuant to the version of the kidnapping statute in effect at the time of the victim's death, kidnapping could be accomplished by, among other things, "forcibly carry[ing] or send[ing] [a] person out of this state" or "forcibly seiz[ing] or confin[ing], or . . . inveigl[ing] or kidnap[ping] any . . . person with intent to extort money or other valuable thing thereby[.]" Former MCL 750.349;[6]

---

[6] The text of MCL 750.349 was amended by 2006 PA 159, which took effect on August 24, 2006. But the proofs established that the offenses committed in this case occurred on or about September 20, 2005. We look

see also *People v Wesley*, 421 Mich 375, 382; 365 NW2d 692 (1984). After a thorough review of the trial testimony, and bearing in mind that "[c]ircumstantial evidence and reasonable inferences drawn therefrom may be sufficient to prove the elements of a crime," *Jolly*, 442 Mich at 466, we conclude that a rational trier of fact could have found beyond a reasonable doubt that defendant kidnapped the victim while in this state by forcibly removing her from Michigan to Indiana. Likewise, a rational trier of fact could have found beyond a reasonable doubt that defendant inveigled or kidnapped the victim while in Michigan with the intent to extort[7] her money or automobile. In short, there was sufficient evidence presented at trial from which a rational jury could have found beyond a reasonable doubt that defendant committed at least one essential element of felony murder in this state. See *Wolfe*, 440 Mich at 515-516.[8]

In sum, the trial court should have initially determined as a matter of law that the prosecution's proposed evidence—namely, that at least one element of felony murder and at least one element of premeditated

---

to the language of the kidnapping statute in effect at the time the instant offenses were committed. See *People v Schumacher*, 276 Mich App 165, 167 n 2; 740 NW2d 534 (2007).

[7] The word "extort" is defined merely as "[t]o gain by wrongful methods; to obtain in an unlawful manner; to exact wrongfully by threat or intimidation." Black's Law Dictionary (7th ed).

[8] Alternatively, with respect to the charges of both premeditated murder and felony murder, a rational trier of fact could have concluded beyond a reasonable doubt that the victim "reside[d] in this state . . . at the time the criminal offense [was] committed" within the meaning of MCL 762.2(1)(d). Indeed, the undisputed evidence established that the victim was a resident of St. Joseph County, Michigan, at the time of her death. However, as we explain in part II(E) of this opinion, we are not persuaded that the exercise of territorial jurisdiction under MCL 762.2(1)(d), on the basis of the victim's residency alone, would pass constitutional muster.

murder had been committed within this state—would have been sufficient, if proven, to confer territorial jurisdiction under MCL 762.2(1)(a). Upon such a determination, any controverted factual issues bearing on the existence of territorial jurisdiction should have been submitted to the jury in the same manner as any other jury-submissible issue of fact. As noted, there was ample evidence presented at trial from which the jury could have found beyond a reasonable doubt that defendant committed at least one element of felony murder and at least one element of premeditated murder in this state.[9] Accordingly, even though the evidence suggested that the fatal blows were struck in Indiana, and despite the discovery of the victim's body in Indiana, the trial court had territorial jurisdiction to try defendant for murder under the laws of Michigan. MCL 762.2(1)(a) and (2)(a).[10]

---

[9] Lest there be any confusion on the matter, we wish to make clear that if the jury had determined that none of the alleged jurisdiction-conferring acts, consequences, or conditions had occurred in Michigan, there would have been no territorial jurisdiction to try defendant in Michigan under Michigan's first-degree murder statute. But in such a case, the constitutional protection against double jeopardy would not have barred the state of Indiana or the federal government from charging and trying defendant for the same criminal conduct. *Heath v Alabama*, 474 US 82, 89-90; 106 S Ct 433; 88 L Ed 2d 387 (1985). The United States Supreme Court "has plainly and repeatedly stated that two identical offenses are *not* the 'same offence' within the meaning of the Double Jeopardy Clause if they are prosecuted by different sovereigns." *Id.* at 92 (emphasis in original). "[A] single act constitutes an 'offence' against each sovereign whose laws are violated by that act." *Id.* at 93; see also *Smith*, 478 Mich at 322 (observing that "a defendant who commits one criminal act that violates the laws of two different sovereigns has committed two different offenses for double jeopardy purposes").

[10] Of course, if a trial court determines after viewing the evidence in a light most favorable to the prosecution that no rational trier of fact could find that the alleged jurisdiction-conferring acts, consequences, or conditions of MCL 762.2 occurred in this state, the trial court may take the issue from the jury and decide the factual issues bearing on territorial

E

Defendant also contends that his trial under Michigan's substantive criminal law violated due process. We cannot agree. It does not appear that our courts have yet decided the extent to which the Due Process Clause may limit the application of Michigan's criminal law to conduct occurring partially outside this state. But it is well settled in the civil context that the Due Process Clause forbids a state from applying its own substantive law to a transaction or occurrence in which the state has insufficient interests or with which the state has insufficient contacts. See *Sutherland v Kennington Truck Service, Ltd*, 454 Mich 274, 287; 562 NW2d 466 (1997); see also *Olmstead v Anderson*, 428 Mich 1, 30 n 13; 400 NW2d 292 (1987). Indeed, "if a State has only an insignificant contact with the parties and the occurrence or transaction, application of its law is unconstitutional." *Allstate Ins Co v Hague*, 449 US 302, 310-311; 101 S Ct 633; 66 L Ed 2d 521 (1981).

On the other hand, a state may constitutionally apply its own law if the state "ha[s] a significant contact or significant aggregation of contacts, creating state interests, such that [application] of its law is neither arbitrary nor fundamentally unfair." *Id.* at 313; see also *Phillips Petroleum Co v Shutts*, 472 US 797, 818-819; 105 S Ct 2965; 86 L Ed 2d 628 (1985). Albeit in the context of federal territorial jurisdiction rather than state territorial jurisdiction, the principles announced in *Hague* and *Shutts* have been extended to the criminal-law setting. See, e.g., *United States v Yousef*, 327 F3d 56, 111 (CA 2, 2003); *United States v Davis*, 905 F2d 245, 248-249 (CA 9, 1990); *United States v*

jurisdiction as a matter of law. This would be tantamount to a directed verdict for the defense. See, e.g., *People v Mehall*, 454 Mich 1, 6; 557 NW2d 110 (1997).

*Shahani-Jahromi*, 286 F Supp 2d 723, 727 (ED Va, 2003). The United States Court of Appeals for the Second Circuit has observed that " '[i]n order to apply extraterritorially a federal criminal statute to a defendant consistently with due process, there must be a sufficient nexus between the defendant and the United States, so that such application would not be arbitrary or fundamentally unfair.' " *Yousef*, 327 F3d at 111, quoting *Davis*, 905 F2d at 248-249. This "nexus requirement . . . appears to take into consideration factors comparable to the analysis articulated by the Supreme Court in *Hague* in the state choice of law context by ensuring a sufficient tie to the United States rendering application of United States law inoffensive to fundamental principles of due process." *Shahani-Jahromi*, 286 F Supp 2d at 727-728.

Relying in part on the United States Supreme Court's decision in *Strassheim*, the United States Court of Appeals for the Eleventh Circuit has denied habeas corpus relief for a criminal defendant who claimed "that his prosecution in Alabama for a murder in Georgia offend[ed] various due process concepts which limit the territorial reach of state criminal prosecutions." *Heath v Jones*, 941 F2d 1126, 1138 (CA 11, 1991). The court held that because a portion of the crime had occurred in Alabama, and had "directly violated the peace, tranquility, and laws of Alabama," the state had "established a sufficient nexus" and could constitutionally exercise jurisdiction over the offense. *Id.* at 1139.

As discussed earlier, the jury was instructed in the present case that "the prosecutor must also prove beyond a reasonable doubt that [the victim] was a resident of the State of Michigan, St. Joseph County, at the time of her death, *and* that the Defendant committed some act toward the commission of the crime while

within the State of Michigan, County of St. Joseph . . . ." (Emphasis added.) We find it necessary to point out that this instruction did not comport with the actual statutory text of MCL 762.2. The trial court unnecessarily instructed the jury that it was required to find *both* that the victim resided in the state of Michigan *and* that the offense was partially committed in this state. MCL 762.2(1) is written in the disjunctive, and purports to confer territorial jurisdiction if *any one* of the conditions listed in subsections 1(a) through 1(e) has been satisfied. Accordingly, the requirements of MCL 762.2 would have purportedly been satisfied upon proof *either* that defendant "commit[ted] a criminal offense . . . partly within this state," MCL 762.2(1)(a), *or* that the "victim of the offense . . . reside[d] in this state . . . at the time the criminal offense [was] committed," MCL 762.2(1)(d). Stated another way, the prosecution could have ostensibly satisfied the requirements of MCL 762.2 by proving *either one* of these factors, and would not have been required to prove *both* that the victim resided in this state *and* that the offense was partially committed in this state.[11]

---

[11] The trial court's instruction to the jury was technically erroneous in another respect as well. MCL 762.2 does not confer territorial jurisdiction merely because a defendant has "committed some act toward the commission of the crime while within the State of Michigan," as the trial court instructed. Instead, MCL 762.2 confers territorial jurisdiction if, among other things, a defendant "commits a criminal offense wholly or partly within this state" or a defendant's "conduct constitutes an attempt to commit a criminal offense within this state." MCL 762.2(1)(a) and (b). The statute goes on to provide that "[a] criminal offense is considered under [MCL 762.2(1)(a)] to be committed partly within this state" only if "[a]n act constituting an element of the criminal offense is committed within this state," or if "[t]he result or consequences of an act constituting an element of the criminal offense occur within this state," or if "[t]he criminal offense produces consequences that have a materially harmful impact upon the system of government or the community welfare of this state, or results in persons within this state being

Because it is undisputed that the victim was a resident of the state of Michigan at the time of her death, it might appear at first blush that statutory jurisdiction could have been established on the basis of the victim's residency alone. See MCL 762.2(1)(d) (purporting to confer territorial jurisdiction whenever "[a] victim of the offense . . . resides in this state . . . at the time the criminal offense is committed"). However, we are not persuaded that the exercise of territorial jurisdiction on the basis of the victim's residency alone would have passed constitutional muster. Indeed, as the United States Supreme Court has concluded, "nominal residence—standing alone—[is] inadequate" to justify the choice of one state's law over that of another state. *Hague*, 449 US at 311; see also *Home Ins Co v Dick*, 281 US 397, 408; 50 S Ct 338; 74 L Ed 926 (1930). Accordingly, it does not appear that the exercise of territorial jurisdiction under MCL 762.2(1)(d), solely on the basis of the victim's residency, would have withstood constitutional scrutiny. See *Hague*, 449 US at 311; *Dick*, 281 US at 408.

Nonetheless, we conclude that the exercise of territorial jurisdiction under MCL 762.2(1)(a) was constitutional. Quite apart from the victim's residency, the proofs established that at least one essential element of both felony murder and premeditated murder was actually committed within the state of Michigan. As explained in more detail previously, the evidence pre-

defrauded or otherwise harmed." MCL 762.2(2)(a), (b), and (c). Therefore, the trial court erred by instructing the jury that it was merely required to find that defendant had "committed some act toward the commission of the crime while within the State of Michigan . . . ." Nevertheless, we find this error harmless in light of the fact that there was sufficient evidence presented at trial from which the jury could have concluded beyond a reasonable doubt that defendant committed at least one essential element of felony murder and at least one essential element of premeditated murder in this state.

sented at trial showed that defendant premeditated the killing, kidnapped the victim, and selected the murder weapon in Michigan. In light of the fact that at least one essential element of each charged crime was committed within this state, we have no difficulty concluding that there was "a significant contact or significant aggregation of contacts" so that application of Michigan's criminal law was "neither arbitrary nor fundamentally unfair." *Hague*, 449 US at 313. Moreover, we also conclude that defendant's conduct "directly violated the peace, tranquility, and laws" of Michigan, and that this state therefore had "a sufficient nexus" with the conduct so as to permit the constitutional exercise of territorial jurisdiction. *Heath*, 941 F2d at 1139. The application of Michigan's first-degree murder statute to defendant's conduct fully comported with the constitutional guarantee of due process.

F

Relying on *United States v Cabrales*, 524 US 1; 118 S Ct 1772; 141 L Ed 2d 1 (1998), defendant also suggests that venue was not proper in St. Joseph County, Michigan, because his trial was not conducted in the district and vicinage where the crime was committed. It is true that the United States Constitution guarantees the right to be tried in the proper venue in the context of federal prosecutions. *Id.* at 6. Indeed, "Article III, § 2, cl 3 instructs that 'Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed' " and "the Sixth Amendment calls for trial 'by an impartial jury of the State and district wherein the crime shall have been committed.' " *Id.* [12] However, " 'these provisions apply only to pros-

---

[12] The Michigan Constitution of 1963 contains no similar venue or vicinage requirement. It is true that a vicinage requirement did appear in

ecutions in Federal courts.' " *People v Lee*, 334 Mich 217, 224; 54 NW2d 305 (1952) (citation omitted); see also *Caudill v Scott*, 857 F2d 344, 345-346 (CA 6, 1988); *Cook v Morrill*, 783 F2d 593, 595-596 (CA 5, 1986); *People v Pascarella*, 92 Ill App 3d 413, 417-418; 415 NE2d 1285 (1981). Accordingly, in this state prosecution, defendant had no federal constitutional right to be tried in a certain venue or vicinage.

The Michigan Legislature has provided that "[w]henever a felony consists or is the culmination of 2 or more acts done in the perpetration thereof, said felony may be prosecuted in any county in which any 1 of said acts was committed." MCL 762.8. The determination of venue is a question of fact for the jury, *Watson*, 307 Mich at 603; *Belanger*, 120 Mich App at 757, and the existence of venue "must be proved by the prosecutor beyond a reasonable doubt," *Webbs*, 263 Mich App at 533. As noted previously, there was sufficient evidence presented at trial from which the jury could have concluded beyond a reasonable doubt that defendant committed at least one element of premeditated murder and at least one element of felony murder in St. Joseph County, Michigan. Consequently, venue was proper in St. Joseph County. MCL 762.8.

III

Defendant also argues that the photographs of the victim were gruesome and that their prejudicial effect substantially outweighed any probative value. There-

the Michigan Constitution of 1835, but that requirement was omitted from the Michigan constitutions of 1850 and 1908. *People v Lee*, 334 Mich 217, 225; 54 NW2d 305 (1952). A vicinage requirement was also omitted from the 1963 constitution. "The evident purpose" of omitting the vicinage requirement from these later constitutions was "to permit the legislature some latitude in legislating as to venue of criminal cases." *Id.*

fore, he contends that the trial court abused its discretion by admitting the photographs into evidence. We cannot agree.

A decision whether to admit photographs is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *People v Gregory*, 21 Mich App 76, 78; 174 NW2d 905 (1969).

Photographic evidence is generally admissible as long as it is relevant, MRE 401, and not unduly prejudicial, MRE 403. *Unger*, 278 Mich App at 257. " 'Photographs may . . . be used to corroborate a witness' testimony,' and '[g]ruesomeness alone need not cause exclusion.' " *Id.*, quoting *People v Mills*, 450 Mich 61, 76; 537 NW2d 909 (1995).

In the case at bar, defendant's intent was directly in issue because it was an essential element of premeditated murder and felony murder. The photographs were helpful in proving defendant's intent to kill because they illustrated the nature and extent of the victim's injuries. See *Unger*, 278 Mich App at 257; see also *People v Howard*, 226 Mich App 528, 549-550; 575 NW2d 16 (1997). The photographs were also helpful in explaining and corroborating the witnesses' testimony concerning the victim's cause of death. Photographs may properly be used to corroborate other evidence and are not excludable simply because they are cumulative of a witness's oral testimony. *Mills*, 450 Mich at 76. The jury is not required to depend solely on the testimony of experts, but is entitled to view the severity and vastness of the injuries for itself. *Id.* at 72-73. The photographs admitted in this case specifically corroborated the testimony concerning the cause of the victim's death and the nature and extent of her fatal injuries. We conclude that the photographs were relevant because the issue of

defendant's intent to kill was of consequence to the determination of the action, and a finding of intent to kill was made more probable by the nature and extent of the injuries as depicted in the photographs. MRE 401; *Mills*, 450 Mich at 66-68.

We also conclude that the photographs were highly probative and that their probative value was not outweighed by the danger of undue prejudice. MRE 403. Although certain of the pictures appear gruesome, their admission was helpful in proving that the victim had been intentionally killed and in corroborating the trial testimony. As already noted, " '[g]ruesomeness alone need not cause exclusion.' " *Unger*, 278 Mich App at 257, quoting *Mills*, 450 Mich at 76. We cannot say that the probative value of the photographs was substantially outweighed by the danger of undue prejudice. *Unger*, 278 Mich App at 257. The trial court did not abuse its discretion by admitting the photographs into evidence.

Affirmed.