# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
March 24, 2015

Plaintiff-Appellee,

v

No. 319254
Wayne Circuit Court
LC No. 12-008428-FC

CHARLES ANTHONY JACKSON, JR.,

Defendant-Appellant.

Before: BOONSTRA, P.J., and SAWYER and O'CONNELL, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of felony murder, MCL 750.316(1)(b), armed robbery, MCL 750.529, and conspiracy to commit unarmed robbery, MCL 750.157a. He was sentenced to life imprisonment for the felony-murder conviction, 250 to 500 months' imprisonment for the armed robbery conviction, and one to five years' imprisonment for the conspiracy to commit unarmed robbery conviction, to be served concurrently. We affirm.

First, defendant argues that he was denied his right to a fair trial by the trial court's refusal to instruct the jury on the defense of others defense. We disagree.

This Court reviews "a trial court's determination whether a jury instruction is applicable to the facts of a case for an abuse of discretion." *People v Guajardo*, 300 Mich App 26, 34; 832 NW2d 409 (2013). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Id.*, quoting *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). Questions of law, including the interpretation and application of relevant statutes, are reviewed de novo. *Id.*

The United States and Michigan Constitutions guarantee a criminal defendant the right to present a defense. US Const, Ams VI, XIV; Const 1963, art 1, § 13. This right entitles the defendant to a properly instructed jury. *People v Kurr*, 253 Mich App 317, 326-327; 654 NW2d 651 (2002); see also *Guajardo*, 300 Mich App at 34. "The trial court's role is to clearly present the case to the jury and to instruct it on the applicable law." *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007). "A defendant asserting an affirmative defense must produce some evidence on all elements of the defense before the trial court is required to instruct the jury regarding the affirmative defense." *Guajardo*, 300 Mich App at 34-35.

-1-

In the instant case, defendant asked the trial court to instruct the jury on the defense of others. The self-defense act (SDA), MCL 780.971 *et seq.*, "codified the circumstances in which a person may use deadly force in self-defense or in defense of another person without having the duty to retreat." *People v Dupree*, 486 Mich 693, 708; 788 NW2d 399 (2010). The SDA, MCL 780.972(1), provides:

An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if either of the following applies:

(a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.

(b) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent sexual assault of himself or herself or of another individual.

The trial court did not abuse its discretion in refusing to instruct the jury on the defense of others because defendant failed to present evidence on all the elements of the defense. See *Guajardo*, 300 Mich App at 34-35. An individual asserting a defense of others defense must show that he is somewhere he has a legal right to be and is not engaged in the commission of a crime. See MCL 780.972(1). Defendant, Zelda Taylor, Iashia Knox, and Kristan Holmes were clearly engaged in the commission of a crime when defendant used deadly force against Hassan Jaber. All of these individuals testified that they planned to rob Jaber. Although their accounts varied in some respects regarding the specifics of the robbery, it was undisputed that they drove to Jaber's house with the intent to rob him. Knox and Taylor were engaged in a threesome with Jaber to distract him while Holmes or defendant entered Jaber's home to search for money. Similarly, defendant did not have a legal right to be in Jaber's house and bedroom. Defendant entered Jaber's home without his permission or an invitation.

In addition, to use deadly force against an individual, a defendant must also "honestly and reasonably believe[] that the use of deadly force is necessary . . . ." MCL 780.972(1). Defendant appears to claim that the use of deadly force was necessary to prevent the imminent sexual assault of Taylor. However, defendant testified that he hit Jaber on the head with the tree branch three times. The first time he hit Jaber, Jaber fell. Taylor and Knox then ran from the room. At this point, the use of deadly force was no longer necessary to prevent the imminent sexual assault of Taylor or Knox. Nonetheless, defendant hit Jaber on the head with the tree branch two more times. Thus, defendant's own testimony does not support a defense of others defense.

Second, defendant claims that he was denied his right of confrontation when the trial court allowed Heather Vitta to testify and admitted Jennifer Jones's report on her DNA analysis. We agree that admitting Jones's report was a violation of the Confrontation Clause, disagree that Vitta's testimony violated the Confrontation Clause, and find that regardless, defendant cannot show plain error affecting his substantial rights.

To preserve a claim that he was denied his Sixth Amendment right of confrontation, a defendant must object at trial on this ground. *People v McPherson*, 263 Mich App 124, 137; 687 NW2d 370 (2004). An objection that the evidence is hearsay does not preserve the constitutional issue for appellate review. *People v Coy*, 258 Mich App 1, 12; 669 NW2d 831 (2003). When the prosecutor asked Vitta about the DNA testing results, defense counsel objected and argued that such testimony was hearsay because the testing was not conducted by Vitta, but by Jones, who did not testify. Defense counsel did not object on confrontation grounds. Therefore, defendant's claim that his right of confrontation was violated is unpreserved. See *McPherson*, 263 Mich App at 137; *Coy*, 258 Mich App at 12.

Generally, this Court reviews de novo a defendant's claim that he was denied his constitutional right of confrontation or his right to present a defense. See *People v Nunley*, 491 Mich 686, 697; 821 NW2d 642 (2012); *Unger*, 278 Mich App at 247. However, "[a]ppellate review of unpreserved constitutional claims is for plain error affecting the defendant's substantial rights." *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012). Defendant must show that the plain error affected the outcome of the proceedings. *Id.* at 473. "[R]eversal is warranted only if the error resulted in the conviction of an innocent defendant or seriously affected the fairness, integrity, or public reputation of the judicial proceedings regardless of the guilt or innocence of the accused." *Id*.

Under the Confrontation Clause, a defendant has the right "to be confronted with the witnesses against him." US Const, Am VI; see also Const 1963, art 1, § 20. "[T]he right to confront and cross-examine witnesses is aimed at truth-seeking and promoting reliability in criminal trials." *Nunley*, 491 Mich at 697. An out-of-court testimonial statement is inadmissible under the Confrontation Clause "unless the declarant appears at trial or the defendant has had a previous opportunity to cross-examine the declarant." *Id.* at 698; see also US Const, Am VI. The United States Supreme Court has not specifically defined a "testimonial statement," but has recognized that testimony is typically "a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Crawford v Washington*, 541 US 36, 51; 124 S Ct 1354; 158 L Ed 2d 177 (2004) (citations and quotation marks omitted). The Confrontation Clause only applies "to statements used as substantive evidence." *People v Fackelman*, 489 Mich 515, 528; 802 NW2d 552 (2011).

Jones's report was testimonial in nature. Because she did not testify and defendant did not have a previous opportunity to cross-examine her, the admission of the report into evidence violated the Confrontation Clause. See *Nunley*, 491 Mich at 697; see also US Const, Am VI. It appears that Jones took steps similar to Vitta in that she compared the DNA collected with the DNA from the reference samples and made conclusions regarding whether they were a match. This information was then contained in her report. Jones's report reflects what she would have testified to if she had appeared in court. The conclusion that blood from the crime scene matches the DNA from defendant or Jaber would be presented at trial "for the purpose of establishing or proving some fact"—defendant's guilt and role in the crime. See *Crawford*, 541 US at 51. Consequently, the report is testimonial in nature.

With respect to Vitta's testimony, a plurality of justices of the United States Supreme Court in *Williams v Illinois*, __ US __, __; 132 S Ct 2221, 2228; 183 L Ed 2d 89 (2012),[1] a case with very similar facts to the instant case, concluded:

> Out-of-court statements that are related by the expert solely for the purpose of explaining the assumptions on which that opinion rests are not offered for their truth and thus fall outside the scope of the Confrontation Clause.

We agree with the reasoning provided in *Williams*. Because the DNA profiles obtained by Jones were the assumptions on which Vitta's opinion rested, Vitta's testimony did not run afoul of the Confrontation Clause. See *Williams*, __ US at __; 132 S Ct at 2228.

Furthermore, the admission of Vitta's testimony and Jones's report was not plain error affecting defendant's substantial rights. See *King*, 297 Mich App at 472-473. Defendant admitted that he hit Jaber three times on the head with a tree branch. He admitted to being in Jaber's house, which would explain how his blood came to be on the interior front door trim of Jaber's house. Defendant also testified that he injured his hand that day at work, so it was bleeding, which further explains why his blood was in the house and on the tree branch.

Defendant claims that his decision to testify was affected by the court's erroneous decisions to allow Vitta to testify and to admit Jones's report. Even if this is true, the testimony from Taylor, Knox, and Holmes was enough for a reasonable jury to conclude that defendant committed felony murder. Taylor testified that she and Knox were kissing in Jaber's bedroom when Jaber fell. She then saw defendant in the bedroom. Taylor also testified that in the car defendant said, "I don't know what you're upset for, I have blood on my hands." Knox testified that she saw defendant come in the bedroom and swing a stick. Holmes testified that she saw defendant take a tree branch with him when he went inside Jaber's house. After they left, defendant said they needed to go back. He went inside and came out with the same tree branch that defendant took in with him. Holmes also saw defendant dispose of the branch near defendant and Taylor's house, which is where it was found. Finally, Holmes testified that when they were back at defendant and Taylor's house, defendant said, "I think I hurt him; I didn't mean to hurt him." Defendant also said something about "enjoying hitting [Jaber] that way." Given all of the evidence implicating him in Jaber's murder, defendant cannot show that any error in the admission of Vitta's testimony or Jones's report was outcome determinative.

Finally, in his standard 4 brief, defendant claims that his right to a fair trial was violated by the admission of irrelevant and unfairly prejudicial photographs of Jaber. We disagree.

"A decision whether to admit photographs is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion." *People v Gayheart*, 285 Mich App 202, 227; 776 NW2d 330 (2009). "If the court's evidentiary error is nonconstitutional and preserved, then it is presumed not to be a ground for reversal unless it affirmatively appears that,

---

[1] We note that this Court is not bound by *Williams* because *Williams* was a plurality decision. See *People v Beasley*, 239 Mich App 548, 559; 609 NW2d 581 (2000).

more probably than not, it was outcome determinative – i.e., that it undermined the reliability of the verdict." *People v Douglas*, 496 Mich 557, 565-566; 852 NW2d 587 (2014) (citations and quotation marks omitted).

Generally, photographic evidence is admissible as long as it is relevant under MRE 401 and not unduly prejudicial under MRE 403. *Gayheart*, 285 Mich App at 227. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Even if evidence is relevant, it may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403.

"'Photographs may be used to corroborate a witness' testimony,' and 'gruesomeness alone need not cause exclusion.'" *Gayheart,* 285 Mich App at 227, quoting *People v Mills*, 450 Mich 61, 76; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995). In addition,

> Photographs may properly be used to corroborate other evidence and are not excludable simply because they are cumulative of a witness's oral testimony. The jury is not required to depend solely on the testimony of experts, but is entitled to view the severity and vastness of the injuries for itself. [*Id.* (citations and quotation marks omitted).]

Photographs showing the nature and extent of a victim's injuries can also be helpful in proving a defendant's intent to kill. *Id*. In addition, photographs can explain and corroborate witness testimony regarding cause of death. *Id*.

On the other hand, some photographs are irrelevant or substantially more prejudicial than probative, and thus should be excluded:

> Photographs that are merely calculated to arouse the sympathies or prejudices of the jury are properly excluded, particularly if they are not substantially necessary or instructive to show material facts or conditions. If photographs which disclose the gruesome aspects of an accident or a crime are not pertinent, relevant, competent, or material on any issue in the case and serve the purpose solely of inflaming the minds of the jurors and prejudicing them against the accused, they should not be admitted in evidence. [*Mills*, 450 Mich at 76-77.]

"However, if photographs are otherwise admissible for a proper purpose, they are not rendered inadmissible merely because they bring vividly to the jurors the details of a gruesome or shocking accident or crime, even though they may tend to arouse the passion or prejudice of the jurors." *Id.* at 77.

The trial court did not abuse its discretion in admitting the photographs at issue. First, the photographs were relevant. Defendant's intent was at issue because it is an essential element of felony murder. *People v Seals*, 285 Mich App 1, 12; 776 NW2d 314 (2009). The first and third photographs, taken of Jaber's face and the back of his head during his autopsy, were relevant in proving defendant's intent "to kill, to do great bodily harm, or to create a high risk of death or

great bodily harm with knowledge that death or great bodily harm was the probable result," because the photographs depict the nature and extent of Jaber's injuries. See *Gayheart*, 285 Mich App at 227; *Seals*, 285 Mich App at 12. The jury is not required to rely solely on the testimony of experts—in this case, the medical examiner—and "is entitled to view the severity and vastness of the injuries for itself." *Gayheart*, 285 Mich App at 227. The photographs also corroborated the testimony of Dr. Ayleesh Gupta, the medical examiner, regarding Jaber's cause of death. In addition, the photographs corroborated Taylor's and Knox's testimony that defendant hit Jaber in the back of the head, or was in the room right after Jaber fell. The second photograph, which showed the positioning of Jaber's body when he was found at the scene, was also relevant in corroborating or disproving the witnesses' accounts of the events. Jaber's position each time defendant hit him with the tree branch is particularly relevant, given defendant's claim that he was defending Taylor or thought that she was in danger.

Second, the photographs were not substantially more prejudicial than probative. As discussed above, the first and third photographs were highly probative in determining defendant's intent. The second photograph was probative in providing context to the witnesses' accounts, which varied, and helping the jury determine whose version of the events was accurate. The photographs at issue serve a purpose other than "inflaming the minds of the jurors and prejudicing them against the accused." See *Mills*, 450 Mich at 77. In addition, gruesomeness alone is not cause for exclusion, nor is the fact that photographs are cumulative of a witness's testimony. *Gayheart*, 285 Mich App at 227; see also *Mills*, 450 Mich at 76; *Unger*, 278 Mich App at 257. MRE 403 seeks to avoid the danger of unfair prejudice, "not prejudice that stems only from the abhorrent nature of the crime itself." *People v Starr*, 457 Mich 490, 500; 577 NW2d 673 (1998). Finally, "Rule 403 determinations are best left to a contemporaneous assessment of the presentation, credibility, and effect of testimony by the trial judge." *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008).

Affirmed.

/s/ Mark T. Boonstra
/s/ David H. Sawyer
/s/ Peter D. O'Connell