# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
February 24, 2015

Plaintiff-Appellee,

v

No. 319154
Saginaw Circuit Court

DAQUAVIS DESHAW MARTIN,

LC No. 13-038567-FC

Defendant-Appellant.

Before: RIORDAN, P.J., and MURPHY and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals as of right his conviction following a jury trial of first-degree premeditated murder, MCL 750.316(1)(a). He was sentenced to mandatory life in prison without the possibility of parole. We affirm.

Defendant and three accomplices brutally beat a 52-year-old man to death. The assault took place at night in the yard of an individual who was alerted to the attack after hearing some commotion and loud voices near his living room window. He stepped outside onto the porch and witnessed the ongoing assault on the sidewalk in front of his home. We shall hereafter refer to this individual as "the eyewitness." The eyewitness testified, "As soon as I stepped on the porch, four were hitting and kicking [the victim]. Yeah, all four were hitting and kicking[.]" The eyewitness identified defendant as one of the perpetrators of the assault from a photographic lineup and at trial. According to the eyewitness, the four assailants ignored his presence on the porch for about 15 to 20 seconds, while continuing to mercilessly strike and kick the defenseless victim. When the eyewitness thereafter spoke up and demanded to know what was going on, two of the assailants backed away, but the other two, including defendant, continued the assault, with, among other blows, defendant kicking the victim in the torso and the other assailant striking the victim with a candy cane Christmas decoration. The eyewitness further testified:

> *Q.* When you . . . stepped on . . . your front porch, the victim was lying on the cement leading to your home, is that correct?
>
> *A.* Correct.
>
> *Q.* Was that person making any defensive moves whatsoever?

-1-

*A.* At the time I stepped on the porch it appeared he was unconscious so he was – he wasn't able to defend himself at that time. He wasn't moving his arms or anything . . . .

*Q.* And this was what you've estimated 15 to 20 seconds that you watched prior to saying something?

*A.* That's correct.

*Q.* And even after you said something, the two . . . individuals, the defendant and another . . ., continued to beat him?

*A.* That's correct.

The eyewitness also testified that defendant blurted out that he was robbing the victim, and the eyewitness explained that he observed defendant rifling through the victim's clothes.

The forensic pathologist who performed the autopsy described the following injuries suffered by the victim: numerous bruises and lacerations on the victim's face and head ("he had bruises from front to back all around the head"); broken teeth; a sunken eye socket; multiple fractures of the mandible; bruises, lacerations, and abrasions about the torso; four broken ribs; internal bleeding in the chest cavity; extensive bleeding throughout the brain; and blood clots in the brain's ventricles ("When there is blood in these ventricles it is considered a very serious injury because energy has to go through – not only through the skull but through the brain to cause the bleeding inside of the cavity we call ventricles"). The pathologist opined that a significant amount of force was employed to cause the victim's injuries and that the cause of death was "[b]lunt force head trauma." The jury was shown autopsy photographs that were referred to during the pathologist's testimony.

One of defendant's accomplices, who pled guilty to second-degree murder, testified about his and defendant's presence at the crime scene and that he was "pretty sure" that his "peoples played a part" in the attack, although he was not exactly sure "who all." The accomplice testified that no one in the group stood back and asked the assailants to stop the attack. Defendant testified that he was at the crime scene but denied being involved in the beating. He claimed that he tried to break up the attack, telling the others to stop.

Defendant first argues that there was insufficient evidence to support his conviction with respect to the "intent to kill" and "premeditation and deliberation" elements of first-degree murder.[1] We disagree. To convict a defendant of first-degree premeditated murder, the

---

[1] We review de novo the issue regarding whether there was sufficient evidence to sustain a conviction. *People v Lueth*, 253 Mich App 670, 680; 660 NW2d 322 (2002). In reviewing the sufficiency of the evidence, this Court must view the evidence – whether direct or circumstantial – in a light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012); *People v Hardiman*, 466 Mich 417, 428; 646

prosecution must prove that the defendant caused the death of the victim, that the defendant intended to kill the victim (malice), that the intent to kill was premeditated and deliberate, and that the killing was not justified or excused, if at issue. MCL 750.316(1)(a); *People v Mendoza*, 468 Mich 527, 533-534; 664 NW2d 685 (2003); *People v Kelly*, 231 Mich App 627, 642; 588 NW2d 480 (1998); M Crim JI 16.1.

With respect to the intent to kill, it is well settled that such intent may be inferred from any facts in evidence. *People v Unger*, 278 Mich App 210, 223; 749 NW2d 272 (2008). "Because of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient to establish a defendant's intent to kill." *Id.* The intent to kill may be gleaned from the nature of the defendant's acts that constituted the assault, the temper or disposition of mind with which the acts were apparently performed, whether the means used would naturally produce death, any declarations by the defendant, and all other circumstances calculated to throw light upon the intention with which the assault was made. *People v Brown*, 267 Mich App 141, 149 n 5; 703 NW2d 230 (2005). There is "no doubt that kicking a man to death can constitute first degree murder if the clear intent to kill is present." *People v Van Camp*, 356 Mich 593, 601; 97 NW2d 726 (1959).

Here, the jury could reasonably have inferred from the evidence that defendant had the requisite intent to kill on the basis of: the length of time that the assailants beat and kicked the victim; the multiple blows directly to the victim's head; the veracity and intensity of the strikes; defendant's clear knowledge upon observation that the victim was directly absorbing the strikes to his body and head absent the ability to stop them; the evidence that the beating *continued* even though the victim appeared unconscious and was entirely motionless; and the extensive and severe nature of the injuries suffered by the victim as described by the pathologist. Defendant's argument that there was no evidence of him making a declaration indicating or suggesting an intent to kill did not preclude the conviction, given that all of the circumstances surrounding the killing had to also be taken into consideration by the jury. *Unger*, 278 Mich App at 223; *Brown*, 267 Mich App at 149 n 5. Also, the lack of a motive to kill did not necessarily mean that

---

NW2d 158 (2002). A jury, and not an appellate court, observes the witnesses and listens to their testimony; therefore, an appellate court must not interfere with the jury's role in assessing the weight of the evidence and the credibility of the witnesses. *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992). Circumstantial evidence and the reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime. *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999). "It is for the trier of fact . . . to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded to the inferences." *Hardiman*, 466 Mich at 428. The prosecution need not negate every reasonable theory of innocence, but need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). We resolve all conflicts in the evidence in favor of the prosecution. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

defendant lacked the intent to kill.[2]  Finally, in regard to defendant's argument that there was no evidence that he struck the victim in the head causing his death, the argument fails to appreciate that defendant was also tried as an aider and abettor.  MCL 767.39 provides:

> Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense.

In *People v Robinson*, 475 Mich 1, 15; 715 NW2d 44 (2006), our Supreme Court observed:

> We hold that a defendant must possess the criminal intent to aid, abet, procure, or counsel the commission of an offense. A defendant is criminally liable for the offenses the defendant specifically intends to aid or abet, or has knowledge of, as well as those crimes that are the natural and probable consequences of the offense he intends to aid or abet. Therefore, the prosecutor must prove beyond a reasonable doubt that the defendant aided or abetted the commission of an offense and that the defendant intended to aid the charged offense, knew the principal intended to commit the charged offense, or, alternatively, that the charged offense was a natural and probable consequence of the commission of the intended offense.

There was sufficient evidence to show that defendant aided and abetted in the assault of the victim, that he intended to do so, and that the natural and probable consequence of the assault, considering its extent and severity, was the death of the victim, resulting in the charged offense of first-degree murder.  Moreover, the underlying basis for this argument, i.e., that defendant did not strike the victim in the head, is questionable, considering the eyewitness's testimony about all four men repeatedly beating and kicking the victim and the mountain of bruises that enveloped the victim's head.  The eyewitness's testimony about defendant kicking the victim in the torso was in reference to defendant's actions after the eyewitness called out to the assailants, not before.  Reversal is unwarranted.

With respect to premeditation and deliberation, premeditation means to think about something beforehand, while deliberation means to measure and evaluate the facets of a choice or problem.  *People v Plummer*, 229 Mich App 293, 300; 581 NW2d 753 (1998).  "Premeditation and deliberation require sufficient time to allow the defendant to take a second look."  *People v Schollaert*, 194 Mich App 158, 170; 486 NW2d 312 (1992).  Factors that may be considered in establishing premeditation include a defendant's actions before and after the crime and the circumstances of the killing itself, including the nature and location of any

---

[2] We do note that there was evidence of an attempt to rob the victim, and one could infer that the beating and killing was motivated by an effort to prevent the victim from ever going to the police; the accomplice's testimony indicated that the assailants knew the victim, which would have been problematic for the assailants.

-4-

wounds. *Plummer*, 229 Mich App at 300. Premeditation and deliberation can be inferred from the circumstances surrounding a killing, and "[m]inimal circumstantial evidence is sufficient to prove an actor's state of mind." *People v Ortiz*, 249 Mich App 297, 301; 642 NW2d 417 (2002). The severity and length of time of a beating, *People v Haywood*, 209 Mich App 217, 230; 530 NW2d 497 (1995), the number of violent blows, *Unger*, 278 Mich App at 231, and the opportunity to reconsider actions before completing a killing, *People v Ortiz-Kehoe*, 237 Mich App 508, 520; 603 NW2d 802 (1999), can all give rise to an inference of premeditation and deliberation.

Here, the jury could reasonably have inferred from the evidence that the killing was premeditated and deliberate on the basis of: the fact that the assailants had to take the time to park their vehicle and approach the victim before engaging in the assault; the length of time that the assailants beat and kicked the victim; the evidence that the assault *continued* even after the eyewitness spoke up and despite the fact that the victim was essentially unconscious and motionless; the evidence that none of the perpetrators sought to stop the assault after it was initiated; and the extensive nature of the injuries suffered by the victim, which clearly took some amount of time to inflict before the beating finally stopped. Defendant and his accomplices had an opportunity to take a second look and reconsider their actions. There was sufficient evidence of premeditation and deliberation, and reversal is unwarranted.

We also note that, in the context of defendant's sufficiency arguments, he contends that because the eyewitness's testimony was allegedly inconsistent, it was rendered completely incredible and unreliable. This is merely an attack on the credibility of the eyewitness. As indicated above, we will not interfere with the jury's role of assessing the credibility of witnesses. *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992). Furthermore, the alleged inconsistencies or problematic aspects of the eyewitness's testimony were insignificant when viewed in the context of his overall testimony, which was strong and consistent on the facts most relevant to the crime.

Defendant next argues that the trial court erred in instructing the jury on flight and on inferences regarding state of mind predicated on use of a weapon. These arguments are meritless. A trial court's determination as to whether a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006). There was evidence that defendant and his accomplices fled the scene of the crime twice, once after the eyewitness confronted them, although not immediately, and next when, after returning to the scene in an attempt to retrieve their cell phones, they sped off after the eyewitness opened his door.[3] This was sufficient to instruct the jury on flight. *People v Coleman*, 210 Mich App 1, 4; 532 NW2d 885 (1995) ("The term 'flight' has been applied to such actions as fleeing the scene of the crime[.]"). Next, the trial court instructed the jury as follows:

---

[3] The eyewitness had gathered up the cell phones after the assailants inadvertently left them behind when fleeing the scene the first time.

The defendant's state of mind may be inferred from the kind of weapon used, the type of wounds inflicted, the acts and words of the defendant and any other circumstances surrounding the alleged killing.

This instruction was consistent with M Crim JI 16.21(2), a standard instruction on inferring state of mind, which concept we discussed earlier in this opinion. Defendant maintains that there was no "weapon" used in the attack. First, there was evidence that the victim was struck with a Christmas ornament, which perhaps was not a dangerous weapon, but we note that the remainder of M Crim JI 16.21, which was *not* read to the jury, concerned "dangerous" weapons. Regardless, the instruction simply directed the jury to consider all of the circumstantial evidence in determining defendant's state of mind; the trial court never directly told the jurors that a weapon was indeed used in the fatal assault.

Additionally, with respect to both claims of alleged instructional error, even assuming error, defendant had not established the requisite prejudice. MCL 769.26; *People v Lukity*, 460 Mich 484, 495; 596 NW2d 607 (1999).

Defendant next argues that the trial court erred by admitting photographs of the deceased victim. We review a trial court's decision to admit photographs for an abuse of discretion. *People v Gayheart*, 285 Mich App 202, 227; 776 NW2d 330 (2009). Photographic evidence is generally admissible when relevant, MRE 401, and if not unduly prejudicial, MRE 403. *Gayheart*, 285 Mich App at 227. Such evidence can be used to corroborate the testimony of a witness, and it need not be excluded on the basis of gruesomeness alone. *Id.* Photographs can also be relevant to establishing the elements of the crime, including the "intent" element relative to first-degree murder. *People v Mesik (On Reconsideration)*, 285 Mich App 535, 544; 775 NW2d 857 (2009). Here, the photographs were properly admitted to corroborate the forensic pathologist's testimony regarding the victim's injuries and to assist the prosecution in establishing the intent to kill (nature and extent of injuries), as well as premeditation and deliberation (extent of injuries). We agree with the trial court's determination that, while the photographs are gruesome, they "illustrate[d] the injuries and the type of force necessary to create" the injuries. There was no abuse of discretion.

Defendant next alleges numerous instances of prosecutorial misconduct. Given the failure to preserve the issue, we review for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). With respect to defendant's claims pertaining to questions concerning gang signs allegedly reflected in certain photographs of the assailants and as to underage drinking, defendant has simply failed to establish plain error affecting his substantial rights. Moreover, the trial court instructed the jury that the attorneys' questions were not evidence, and jurors are presumed to follow their instructions. *Unger*, 278 Mich App at 235.

With respect to defendant's claim that the prosecutor impermissibly told the jurors that they would have to justify to him any finding that the eyewitness was not credible, it is clear that the prosecutor was simply emphasizing that the eyewitness was a credible witness and worthy of belief based on the facts and testimony, which is proper argument. *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007).

Defendant next takes issue with the prosecutor's remark that the victim did not deserve what occurred to him and the prosecutor's statement, "If you want to talk about a totally senseless, brutal, unimaginable crime, you would be hard put to come up with something worse than this one." "Appeals to the jury to sympathize with the victim constitute improper argument." *People v Watson*, 245 Mich App 572, 591; 629 NW2d 411 (2001). The prosecutor's characterization of the crime was consistent with the evidence. Although poignant, the prosecutor did not ask the jury to convict defendant out of sympathy for the victim. In any event, the trial court instructed, and the prosecutor reiterated, that the attorneys' statements were not evidence. See *Unger*, 278 Mich App at 235.

Defendant also argues that the prosecutor impermissibly elicited a witness's opinion about another witness's credibility. The prosecution asked defendant why the eyewitness would have lied about what he had witnessed on the night of the incident. Defendant simply responded that he did not know the answer to that question. We fail to see how defendant was prejudiced by this questioning; assuming error, it was harmless.

Defendant next argues that the prosecutor misstated the law regarding the presumption of innocence and accomplice testimony. "A prosecutor's clear misstatement of the law that remains uncorrected may deprive a defendant of a fair trial," but "if the jury is correctly instructed on the law, an erroneous legal argument made by the prosecutor can potentially be cured." *People v Grayer*, 252 Mich App 349, 357; 651 NW2d 818 (2002). Assuming a misstatement of law by the prosecutor, reversal is unnecessary because the trial court specifically and accurately instructed the jury on the presumption of innocence and accomplice testimony, curing any presumed misstatements.

Defendant next presents an argument that trial counsel was ineffective in relationship to all of the preceding arguments addressed in this opinion to the extent that counsel failed to preserve the issues or waived them or was otherwise deficient in his performance. Given our rulings on the prior issues, this argument fails, as nothing counsel could have done would change the outcomes on these issues.

Finally, in his Standard 4 brief, defendant argues that he was denied a fair trial when the trial court admitted the results of an allegedly unconstitutional and highly suggestive photographic identification process. He also argues that trial counsel was ineffective for failing to object to the identification. "A photographic identification procedure or lineup violates due process guarantees when it is so impermissibly suggestive as to give rise to a substantial likelihood of misidentification." *People v McDade*, 301 Mich App 343, 357; 836 NW2d 266 (2013).

Here, the eyewitness initially testified that he was shown two photographic lineups, one with two individuals and one with six individuals. He then testified that defendant, whom he had identified, was the only individual common to both. It is conceivable that this, in and of itself, would have been impermissibly suggestive. However, the eyewitness later testified that he was actually shown only one lineup with six individuals and saw the other depiction later that evening on television. Further, he was only told that an assailant "may" be in the lineup. There is nothing to indicate that such identification was impermissibly suggestive. And as an objection to the photographic identification would have been futile, defendant is unable to show that

counsel's performance fellow below an objective standard of reasonableness. *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000). Reversal is unwarranted.

Affirmed.

/s/ Michael J. Riordan
/s/ William B. Murphy
/s/ Mark T. Boonstra