*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

TANINO EMON MILLER,

      Defendant-Appellant.

UNPUBLISHED
August 1, 2019

No. 341306
Wayne Circuit Court
LC No. 17-003878-01-FC

Before: GADOLA, P.J., and BOONSTRA and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals by right his convictions, following a jury trial, of second-degree murder, MCL 750.317, two counts of assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.[1]  The trial court sentenced defendant to concurrent prison sentences of 20 to 30 years for the second-degree murder conviction and 6 to 10 years for each of the AWIGBH convictions, those sentences to run consecutively to a two-year prison sentence for the felony-firearm conviction.  We affirm defendant's convictions, vacate his sentences for second-degree murder and AWIGBH, and remand for resentencing.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On April 3, 2017, Eric Surls drove his car to a liquor store in Detroit, intending to meet defendant and purchase marijuana from him.  He was accompanied by Jerard Walker, who sat in the front passenger seat, and Amyre Collier, who sat in the back seat behind Walker.  Once in the liquor store parking lot, defendant approached Surls's car, but Surls did not allow defendant to enter.  Defendant went around the car to speak with Collier about selling the marijuana.  He

---

[1] Defendant was initially charged with first-degree murder, MCL 750.316, and two counts of assault with intent to murder (AWIM), MCL 750.83, but was convicted of lesser included offenses as well as felony-firearm.

handed some marijuana to Collier, but before Collier could pay him for it, Surls began to drive away. Defendant ran after the car and fired one or more gunshots. A bullet fired by defendant shattered the rear window of Surls's car and struck Walker in the head. Walker died the next day from his injury.

At trial, Surls, Collier, and defendant all testified about the incident. Surls testified that, once defendant approached Surls's car and began talking with Collier, defendant and Collier began arguing about whether Collier owed defendant money for a previous drug purchase. During the argument, defendant told Surls to turn off the engine, and Collier eventually tried to give the marijuana back to defendant. As Collier and defendant continued to argue, Surls saw defendant reach toward his pocket, and noted that defendant had a gun. At that point, according to Surls, he drove away from defendant because he did not feel safe. Surls testified that as he drove away he heard—but did not see defendant fire—two or three gunshots. He further testified that neither he, Walker, nor Collier were carrying guns during the incident.

Collier testified that, as he was "checking out the weed," Surls started to pull his car away from defendant—at which time Collier saw a gun in defendant's hand. According to Collier, defendant ran alongside Surls's car, fired one gunshot through the rear window of the car, and fired a total of three gunshots at the car.

Defendant testified that after he gave Collier a bag of marijuana, Collier pulled out a gun. He did not initially believe that Collier was being serious. Surls began to drive away while defendant was still leaning on the car, causing injury to his wrist. According to defendant, Collier fired two gunshots as Surls drove off, and he fired one shot in return, then ran after Surls's car, but did not fire another gunshot.

Defendant's theory at trial was self-defense; his counsel argued that Surls, Walker, and Collier had robbed defendant and shot at him. Before deliberations, defendant requested that the trial court instruct the jury on the crime of reckless discharge of a firearm causing injury or death, arguing that a reasonable juror could find that defendant's discharge of his firearm was reckless because the liquor store's video surveillance footage showed defendant "running behind [Surls's] car shooting," and because defendant testified that he did not look where he was shooting. The prosecution disagreed, arguing that defendant was not charged with the crime of reckless discharge of a firearm causing death or injury, nor was that crime a lesser included offense of any of defendant's charged crimes. The prosecution also pointed out that, because defendant's theory at trial was based on self-defense (i.e., that defendant intentionally shot at Surls, Walker, and Collier because they were shooting at him), defendant's argument (that the discharge of his firearm was reckless) was illogical. The trial court denied defendant's request to instruct the jury on the charge of reckless discharge of a firearm causing death or injury, but did instruct the jury on self-defense. The jury convicted defendant of second-degree murder for the death of Walker, two counts of AWIGBH for the assaults of Surls and Collier, and felony-firearm. At sentencing, the trial court assessed 25 points each for offense variable (OV) 6 (intent to kill or injure another individual) and OV 13 (continuing pattern of criminal behavior) over defendant's objections. It sentenced defendant as described. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE—AWIGBH

Defendant argues that there was insufficient evidence to support his convictions of AWIGBH for the assaults of Surls and Collier because neither Surls nor Collier was injured. He asserts that the evidence, at most, only established a felonious assault against Surls and Collier. We disagree.

This Court reviews de novo a challenge to the sufficiency of the evidence. *People v Gaines*, 306 Mich App 289, 296; 856 NW2d 222 (2014). We view the evidence "in the light most favorable to the prosecution, to determine whether the trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *Id*. When reviewing a challenge to the sufficiency of the evidence, "[a]ll conflicts in the evidence must be resolved in favor of the prosecution, and circumstantial evidence and all reasonable inferences drawn therefrom can constitute satisfactory proof of the crime." *People v Solloway*, 316 Mich App 174, 180-181; 891 NW2d 255 (2016) (citations omitted). It is the role of the jury, as the trier of fact, "to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Blevins*, 314 Mich App 339, 357; 886 NW2d 456 (2016) (quotation marks and citation omitted).

"The elements of AWIGBH are (1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder." *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014) (quotation marks and citation omitted). "The intent to do great bodily harm less than murder is an intent to do serious injury of an aggravated nature." *Id*. (quotation marks and citation omitted). "If a defendant has such intent, the fact that he was provoked or that he acted in the heat of passion is irrelevant to a conviction." *Id*. at 628-629. With respect to proving a defendant's intent, this Court has stated:

> Because of the difficulty in proving an actor's intent, only minimal circumstantial evidence is necessary to show that a defendant had the requisite intent. Intent to cause serious harm can be inferred from the defendant's actions, including the use of a dangerous weapon or the making of threats. Although actual injury to the victim is not an element of the crime, injuries suffered by the victim may also be indicative of a defendant's intent. [*Id*. at 629 (citations omitted).]

There was sufficient evidence to support defendant's AWIGBH convictions. The testimony of Surls and Collier established that defendant produced a gun during the drug transaction, and that defendant intentionally fired the gun at Surls's car after Surls drove away from defendant. Indeed, defendant himself testified that he chased after Surls's car and fired at it while Surls, Collier, and Walker were inside the vehicle. Defendant's testimony alone establishes his "intent to do serious injury of an aggravated nature." *Stevens*, 306 Mich App at 628. The fact that neither Surls nor Collier sustained an injury in the shooting is immaterial because an injury is not required to prove AWIGBH. *Id*. at 628-629.

Defendant also perfunctorily notes, without elaboration, the fact that the jury did not convict defendant of the more serious charge of assault with intent to murder (AWIM), as though it somehow supports his argument that there was insufficient evidence of AWIGBH. This argument is meritless, and defendant offers nothing to support it. To the extent that defendant

means to suggest that the jury reached a "compromise verdict" rather than relying on the evidence, the argument is not supported by the record. See *People v Graves*, 458 Mich 476, 486-487; 581 NW2d 229 (1998) (holding that a jury is presumed to follow its instruction not to compromise simply to reach a verdict, and "a defendant has no room to complain when he is acquitted of a charge that is improperly submitted to a jury, as long as the defendant is actually convicted of a charge that was properly submitted to the jury").

Defendant relies on *People v Wheeler*, 480 Mich 965, 965; 741 NW2d 521 (2007), in arguing that, at most, he should have been charged with felonious assault rather than AWIGBH. However, the defendant in *Wheeler* "fir[ed] his weapon in the air to convey to those he believed to be burglars that he was armed." *Id*. *Wheeler* is factually distinguishable from this case. The evidence at trial established defendant's intent to do serious injury of an aggravated nature to the occupants of Surls's vehicle. Accordingly, there was sufficient evidence to support defendant's AWIGBH convictions. *Stevens*, 306 Mich App at 628.

## III.  DENIAL OF REQUESTED JURY INSTRUCTION

Defendant also argues that the trial court erred by denying his request to instruct the jury on the offense of reckless discharge of a firearm causing death or injury because the video surveillance footage shows defendant recklessly and carelessly shooting his gun. We disagree.

This Court reviews de novo a trial court's decision whether to give a requested instruction on a lesser included offense. *People v Jones*, 497 Mich 155, 161; 860 NW2d 112 (2014). "However, a circuit court's decision as to whether a requested lesser-included-offense instruction is applicable under the facts of a particular case will only be reversed upon a finding of an abuse of discretion." *Id*. "An abuse of discretion occurs when the circuit court chooses an outcome that falls outside the range of principled outcomes." *Id*. "To warrant reversal of [a defendant's] convictions, [a] defendant must show that it is more probable than not that the failure to give the requested instruction undermined the reliability of the verdict." *People v Lowery*, 258 Mich App 167, 172-173; 673 NW2d 107 (2003).

Initially, we note that defendant's trial testimony is devoid of any mention that defendant was not looking or aiming his gun when he fired. The video surveillance footage of the incident was not included in the lower court record provided to this Court, and defendant failed to produce it on request from this Court. Because defendant did not provide this Court with the record necessary to review this argument, defendant's argument on appeal that the video surveillance footage shows defendant "running after [Surls's] vehicle and carelessly and recklessly shooting" is waived. *People v Dunigan*, 299 Mich App 579, 587; 831 NW2d 243 (2013) (holding that a defendant's failure to provide this Court with the items necessary to review an issue constitutes abandonment of that issue on appeal); see also *People v Anderson*, 209 Mich App 527, 535; 531 NW2d 780 (1995); MCR 7.210(A) through (C).

Moreover, under MCL 768.32(1), a trial court may only instruct the jury, in addition to the charged offenses, on an offense that is "inferior to that charged in the indictment, or of an attempt to commit that offense." An inferior offense means is one that is a lesser included offense of the charged offense. See *People v Cornell*, 466 Mich 335, 354-357; 646 NW2d 127 (2002). In order to be a lesser included offense, it must be "impossible to commit the greater

offense without first committing the lesser offense." *Id*. at 361; see also *Jones*, 497 Mich at 164. Moreover, MCL 768.32(1) forbids the court from instructing the jury on "cognate lesser offenses, which are only 'related' or of the same 'class or category' as the greater offense and may contain some elements not found in the greater offense." *Cornell*, 466 Mich at 355.

To determine whether an offense is necessarily included in a greater offense, this Court must compare the elements of the offenses. *Jones*, 497 Mich at 163-164. If the lesser offense has elements that are not contained within the greater offense, it is a cognate lesser offense, and the trial court may not instruct the jury that it can convict the defendant of the offense. *Id*. at 164 n 23, 165-166.

The statute governing the crime of reckless discharge of a firearm causing injury or death provides:

> Any person who, because of carelessness, recklessness or negligence, but not wilfully or wantonly, shall cause or allow any firearm under his immediate control, to be discharged so as to kill or injure another person, shall be guilty of a misdemeanor . . . . [MCL 752.861; see also *Lowery*, 258 Mich App at 173-174.]

A murder conviction of any degree requires proof of the following elements: "(1) death, (2) caused by defendant's act, (3) with malice, and (4) without justification." *People v Mendoza*, 468 Mich 527, 534; 664 NW2d 685 (2003). First-degree murder requires proof of an additional element—in this case, premeditation. See *People v Gayheart*, 285 Mich App 202, 210; 776 NW2d 330 (2009). The elements of AWIM are "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Henderson*, 306 Mich App 1, 9. "The elements for AWIGBH are (1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder." *Stevens*, 306 Mich App at 628.

The murder offenses with which defendant was charged or of which he was convicted require the intent to kill or injure or a wanton disregard for the possibility that death or injury may result. See *People v Goecke*, 457 Mich 442, 464; 579 NW2d 868 (1998) ("Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm."). Further, AWIM requires proof of a specific intent to kill or inflict great bodily harm, which may not be satisfied by proof of a defendant's wanton and wilful disregard of the likelihood that his actions could cause death or great bodily harm. *People v Brown*, 267 Mich App 141, 150; 703 NW2d 230 (2005). And AWIGBH requires proof that defendant specifically intended "to do serious injury of an aggravated nature," *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014) (citation omitted). Although such intent can be inferred from the use of a dangerous weapon, more than mere carelessness or negligence is required. See, e.g., *People v Blevins*, 314 Mich App 339, 348; 886 NW2d 456 (2016) (stating that the intentional discharge of a firearm "during a confrontation that had already become violent" sufficed to prove intent to commit serious injury of an aggravated nature). By contrast, reckless discharge of a firearm must be committed with "carelessness, recklessness or negligence, but not wilfully or wantonly." Moreover, death or injury (which is required for a conviction of reckless discharge of a firearm) is not an element of AWIM or AWIGBH. *Stevens*,

306 Mich App at 628; *Lowery*, 258 Mich App at 173-174. Therefore, the offense of reckless discharge of a firearm causing death or injury is not a lesser included offense of defendant's charged crimes. *Jones*, 497 Mich at 164 n 23. The trial court did not err by denying defendant's request to instruct the jury on that offense. *Cornell*, 466 Mich at 355; see also *Lowery*, 258 Mich App at 173-174 ("A person can commit [AWIM] without committing the offense of reckless discharge of a firearm. . . . Therefore, [reckless discharge of a firearm] is a cognate lesser offense of [AWIM], and would not be included in the jury instructions.").

Notwithstanding the above, defendant argues that, under this Court's decision in *People v Cummings*, 229 Mich App 151; 580 NW2d 480 (1998), rev'd 458 Mich 877 (1998), defendant's "shooting of the weapon could be deemed reckless," and the trial court therefore erred by not instructing the jury on the charge of reckless discharge of a firearm causing injury or death. Defendant's reliance on *Cummings* is misplaced because our Supreme Court reversed *Cummings* on this exact ground, explaining in relevant part:

> Because the uncontested facts adduced at trial established that the firing of the weapon by the defendant was intentional, the circuit court properly refused a requested instruction on the lesser offense of careless, reckless and negligent discharge of a firearm causing death because defendant's conduct did not fall within the scope of the conduct prohibited by [MCL 752.861]. [*People v Cummings*, 458 Mich 877; 585 NW2d 299 (1998).]

The trial court did not err by declining to give defendant's requested instruction.

## IV. SCORING OF OVS 6 AND 13

Defendant argues that the trial court erred by assessing 25 points for OV 6, because the evidence at trial established that defendant was victimized by Walker, Surls, and Collier. Defendant also argues that the trial court erred by assessing 25 points for OV 13, because defendant's three convictions (second-degree murder and two convictions of AWIGBH) arose out of the same incident and do not establish a pattern of felonious criminal activity involving three or more crimes against a person. We disagree regarding OV 6, but conclude, with respect to the scoring of OV 13, that a remand for resentencing is required.

In considering a challenge to the assessment of points for OVs, the trial court's "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Clear error is present when the reviewing court is left with a definite and firm conviction that an error occurred." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015). A preponderance of the evidence exists when evidence is presented that, "when weighed with that opposed to it, has more convincing force and the greater probability of truth." *People v Cross*, 281 Mich App 737, 740; 760 NW2d 314 (2008). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 438.

When calculating a defendant's sentencing guidelines scores, a trial court may consider all record evidence, including the contents of a Presentence Investigation Report (PSIR) and testimony taken at trial. *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012).

"[I]f the trial court clearly erred by finding that a preponderance of the evidence supported one or more of the OV scores or otherwise erred by applying the facts to the OVs, . . . and if the scoring error resulted in an alteration of the minimum sentence range, [a defendant] would be entitled to resentencing . . . ." *People v Biddles*, 316 Mich App 148, 156; 896 NW2d 461 (2016) (citations omitted).

## A. OV 6

Defendant argues that the trial court erred by assessing him 25 points for OV 6. We disagree. OV 6 relates to defendant's "intent to kill or injure another individual." MCL 777.36(1). The trial court must assess 25 points for OV 6 if the defendant "had unpremeditated intent to kill, the intent to do great bodily harm, or created a very high risk of death or great bodily harm knowing that death or great bodily harm was the probable result." MCL 777.36(1)(b). On the other hand, the trial court must assess 10 points for OV 6 if "a killing is intentional within the definition of second degree murder or voluntary manslaughter, but the death occurred in a combative situation or in response to victimization of the offender by the decedent." MCL 777.36(2)(b). "The sentencing judge shall score this variable consistent with a jury verdict unless the judge has information that was not presented to the jury." MCL 777.36(2)(a).

The trial court's assessment of 25 points for OV 6 was supported by a preponderance of the evidence. Defendant argues that "[t]here was no evidence in the record to support a finding of malice." However, defendant was found guilty of second-degree murder, which requires a showing of malice. *Mendoza*, 468 Mich at 534; see also *Goecke*, 457 Mich at 464. Therefore, the trial court was required to assess 25 points for OV 6 based on the jury's verdict unless Walker's death was the result of a "combative situation" or "in response to victimization of" defendant by Walker. MCL 777.36(1)(b), (2)(a), and (2)(b).

Defendant argues that the evidence at trial established that defendant "was victimized by" Walker, Surls, and Collier. However, the only evidence of defendant's alleged victimization was defendant's own testimony that Collier had a gun, that Collier shot at defendant, and that Surls injured defendant by driving his vehicle away while defendant was in contact with it. In other words, even defendant's own testimony demonstrates that Walker—the decedent—was *not* responsible for defendant's alleged victimization. MCL 777.36(2)(b). Moreover, defendant's testimony that he was returning Collier's fire was contradicted by Surls and Collier's testimony. The jury, and the trial court when sentencing defendant, was entitled to find Surls and Collier credible and defendant not credible. See *People v Lemmon*, 456 Mich 625, 637; 576 NW2d 129 (1998); therefore, the trial court did not err in its assessment of 25 points for OV 6.

## B. OV 13

Defendant argues that the trial court erred by assessing him 25 points for OV 13. We conclude that remand for resentencing is required in light of this Court's decision in *People v Carll*, 322 Mich App 690, 704-706; 915 NW2d 387 (2018).

OV 13 is "[a] is continuing pattern of criminal behavior." MCL 777.43(1). A trial court must assess 25 points for OV 13 if "[t]he offense was part of a pattern of felonious criminal

activity involving a combination of 3 or more crimes against a person." MCL 777.43(1)(c). However, a trial court must assess zero points for OV 13 if "[n]o pattern of felonious criminal activity existed." MCL 777.43(1)(g). To determine the appropriate number of points for OV 13, a trial court must count "all crimes within a five-year period, including the sentencing offense," regardless of whether the crimes resulted in a conviction. MCL 777.43(2)(a). Multiple convictions arising from the same incident can be considered for purposes of scoring OV 13. *People v Gibbs*, 299 Mich App 473, 487; 830 NW2d 821 (2013). However, "a single felonious act cannot constitute a pattern" of felonious criminal activity. *Carll*, 322 Mich App at 704-706.

In *Carll*, 322 Mich App at 704-706, this Court held that MCL 777.43(1) requires "more than one felonious event," and that a single criminal act—even if there are multiple victims resulting in multiple convictions—is not a "pattern" of felonious conduct that supports the assessment of 25 points for OV 13. The defendant in *Carll* drove through a stop sign, struck another car, and caused the death of one person and serious injuries to three others. *Id*. at 694-695. The defendant was convicted of one count of reckless driving causing death and three counts of reckless driving causing serious impairment of a bodily function. *Id*. at 694-695. The defendant had no prior record, and the trial court assessed 25 points for OV 13 based on the four convictions stemming from the accident. *Id*. at 704. This Court held that the trial court improperly scored OV 13 at 25 points, explaining that the defendant's reckless driving "constitute[d] a single act, and although there were multiple victims, nothing was presented to show that he committed separate acts against each individual victim in the course of the reckless driving." *Id*.

At sentencing, the trial court in this case stated its belief that it was "required" to assess defendant 25 points under OV 13 when "we are sentencing on three separate charges." Under *Carll*, that statement is not correct.[2] Although the prosecution argues that there was evidence presented at trial that defendant fired multiple shots at the vehicle, and that those multiple shots supported the trial court's assessment, the trial court did not make such a determination—rather it merely concluded that, because defendant had been convicted of three felonies involving crimes against persons, it was "constrain[ed]" to assess 25 points for that variable. Nor did the jury necessarily determine that each conviction was linked to a different bullet—indeed, the prosecution focused its closing argument on the bullet that killed Walker and generally did not refer to multiple gunshots, referring to defendant only as "shooting" at or into a vehicle. In fact, the prosecution argued that if the jury determined that defendant had the "intent to kill one, he ha[d] an intent to kill all, if one of those bullets happens to strike somebody else or someone other than who he initially originally intended to kill." Nor was the jury instructed that it was

---

[2] Defendant was sentenced in October 2017; *Carll* was issued on January 23, 2018. *Carll* described the issue of the assessment of 25 points for OV 13 when multiple convictions arose from a single criminal act as one of "first impression. *Carll*, 322 Mich at 396. The trial court therefore did not have the benefit of *Carll*'s reasoning at the time it sentenced defendant; nonetheless, judicial opinions in criminal cases generally apply retroactively to cases pending on direct appeal when they are issued, where the issue was raised before the lower court. See *People v Mushatt*, 486 Mich 934, 934; 782 NW2d 202 (2010).

required to find that defendant fired multiple shots in order to convict defendant on all charges. Furthermore, although in the context of assessing points for OV 12 (contemporaneous felonious acts), our Supreme Court has held that "each separate pull of the trigger" does not necessarily constitute a separate "act" under OV 12. See *People v Carter*, ___ Mich ___, ___; ___ NW2d___ (2019) (Docket No. 156606) (slip op at 2).

We agree with the prosecution that there was evidence in the record to support the conclusion that defendant fired more than one gunshot. However, in order to support the assessment of 25 points under OV 13, a preponderance of the evidence must establish that defendant committed three or more acts that were "felonious" and "crimes against a person," regardless of whether those acts resulted in a conviction. See MCL 777.43(1)(c); MCL 777.43(2)(a). Because the trial court never made that determination, it was not necessarily implied by the jury verdict, and the trial court believed its assessment was compelled by the mere fact that defendant was convicted of three felonies against a person, we conclude that it is appropriate to vacate defendant's sentences for second-degree murder and AWIGBH and remand for resentencing; at resentencing, the trial court shall either support its assessment of 25 points for OV 13 in light of *Carll*, or resentence defendant after rescoring OV 13 and calculating the resulting new recommended sentencing ranges.[3] See *Biddles*, 316 Mich App at 165.

Affirmed with regard to defendant's convictions. Vacated with regard to defendant's second-degree murder and AWIGBH sentences, and remanded for resentencing. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Mark T. Boonstra
/s/ Brock A. Swartzle

---

[3] Defendant's OV score at sentencing was 115 points, placing him at OV level III (100+ points). See MCL 777.61. MCL 777.43 provides that a score of 50, 25, 10, 5, or zero points may be assessed against a defendant under this variable. See MCL 777.43(1)(a)-(g). However, because defendant's offenses did not involve sexual penetration or gang activity, and they were not classed as crimes against property or public health code violations, the trial court could either score 25 points under MCL 777.43(1)(c) (pattern of felonious activity involving 3 or more crimes against a person), or zero points under MCL 777.43(1)(g) (no pattern of felonious criminal activity). If zero points are assessed under OV 13, defendant's guidelines range would change and resentencing would therefore be required. See *Biddles*, 316 Mich App at 165.