*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

PAUL MICHAEL BABB,

      Defendant-Appellant.

UNPUBLISHED
January 27, 2022

No. 354527
Kent Circuit Court
LC No. 19-009653-FH

Before: CAMERON, P.J., and M. J. KELLY and SHAPIRO, JJ.

PER CURIAM.

Defendant, Paul Michael Babb, appeals his jury trial conviction of possession with intent to deliver methamphetamines, MCL 333.7401(2)(b)(*i*). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 4 to 50 years' imprisonment. We affirm.

## I. BACKGROUND

In May 2019, a woman called 911 because she was "concerned" for defendant's "welfare" after she saw him wandering around a parking lot in the early morning hours. Deputy Ian Hodges was dispatched to the scene, and he made contact with defendant. Deputy Hodges asked defendant if he had any weapons on his person. After defendant reported that he had a pocket knife, Deputy Hodges asked to search him. Defendant agreed to the search, and Deputy Hodges recovered the knife and a blue bag that contained an unknown white substance. Defendant admitted that the blue bag contained methamphetamines. Deputy Hodges placed defendant under arrest, but he did not open the bag because he had been trained not to do so.[1] Deputy Hodges then provided defendant with *Miranda*[2] warnings, and defendant agreed to submit to an interview. The interview was recorded. Defendant claimed that he had "found" the methamphetamines in the Grand Rapids area

---

[1] Deputy Hodges testified that "it can be very dangerous to open that type of stuff" because "drugs can be mixed" and can endanger individuals who "breath[e] it in[.]"

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

and he denied that he had a drug dealer. Defendant also admitted that he had smoked methamphetamines earlier that day.

After the interview, Deputy Hodges called Detective Alexander Fox for assistance. Detective Fox was assigned to a special team that investigated narcotics trafficking. Detective Fox opened the blue bag and determined that it contained six individual bags of substances. Detective Fox field tested the substances, which tested positive for methamphetamines. Detective Fox also weighed the substances. In total, the substances weighed "just . . . shy of seven grams," which Detective Fox estimated had a street value of about $700. However, he also noted that the value could be as low as $175 because of the "large influx [of methamphetamines] coming through Kalamazoo."

Detective Fox then interviewed defendant. The interview was not recorded. According to Detective Fox, defendant confessed to be being both a user and a dealer of methamphetamines. Defendant described how he had divided the methamphetamines into gram-sized bags that he sold for $100 each. Additionally, during the interview, defendant permitted Detective Fox to reach into his pocket for his cellphone. Detective Fox located the cellphone and a scale in defendant's pocket, but he did not locate any paraphernalia that could be used to smoke methamphetamines.

At trial, Detective Fox was qualified as an expert and testified that the scale and the amount of methamphetamines found on defendant's person were consistent with defendant being a drug dealer and not simply a user. Defendant's defense was that, although he was in possession of methamphetamines, the prosecutor had failed to establish that he intended to sell the methamphetamines to others. Defendant focused on the fact that Deputy Hodges did not locate the scale during the initial search, that Deputy Hodges did not realize that the blue bag contained individual bags, and that Detective Fox's interview with defendant was not recorded. Defendant implied that Detective Fox was not credible. Defendant argued that he should be convicted of the lesser offense of possession of methamphetamines, MCL 333.7403(2)(b)(*i*).

The jury convicted defendant of possession with intent to deliver methamphetamines, and defendant was sentenced as described above. This appeal followed.

## II. PROSECUTORIAL ERROR

Defendant argues that he was denied a fair trial because the prosecutor made an improper civic duty argument during his closing argument and vouched for the credibility of Detective Fox. We disagree that defendant is entitled to a new trial.

### A. PRESERVATION, STANDARD OF REVIEW, AND GENERAL PRINCIPLES OF LAW

Defense counsel did not object to the prosecutor's arguments and request a curative instruction, thereby rendering the issues unpreserved. See *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008). Unpreserved issues regarding prosecutorial error are reviewed "for outcome-determinative, plain error." *Id.* "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). An error has affected a defendant's substantial rights when there is "a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id.*

Moreover, "once a defendant satisfies these three requirements, . . . [r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and citation omitted; second alteration in original). A defendant "bears the burden of persuasion with respect to prejudice." *Id*. at 763 (quotation marks and citation omitted).

"A prosecutor has committed [error] if the prosecutor abandoned his or her responsibility to seek justice and, in doing so, denied the defendant a fair and impartial trial." *People v Lane*, 308 Mich App 38, 62; 862 NW2d 446 (2014).

> A defendant's opportunity for a fair trial can be jeopardized when the prosecutor interjects issues broader than the defendant's guilt or innocence. Issues of prosecutorial [error] are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context. The propriety of a prosecutor's remarks depends on all the facts of the case. A prosecutor's comments are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial. [*People v Dobek*, 274 Mich App 58, 63-64; 732 NW2d 546 (2007) (quotation marks and citations omitted).]

Importantly, "[o]therwise improper prosecutorial conduct or remarks might not require reversal if they address issues raised by defense counsel." *Id*. at 64.

### 1. CIVIC DUTY ARGUMENT

Defendant argues that the prosecutor improperly urged the members of the jury to convict defendant "based upon its civic duty to address the influx of methamphetamine[ ] in Kent County."

> Generally, prosecutors are accorded great latitude regarding their arguments and conduct. They are free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case. Nevertheless, prosecutors should not resort to civic duty arguments that appeal to the fears and prejudices of jury members or express their personal opinion of a defendant's guilt, and must refrain from denigrating a defendant with intemperate and prejudicial remarks. [*People v Bahoda*, 448 Mich 261, 282-283; 531 NW2d 659 (1995) (alterations, quotation marks, and citations omitted.]

In this case, defendant argues that the prosecutor made an improper civic duty argument during closing argument by referencing the increasing drug problem in Kent County:

> The system is set up that you have a job and the Judge has a job. Your job is to decide if I proved my case. The Judge's job is to decide what the sentence is. And you have to trust that.
>
> The last thing I want you to take back with you when you go back there,— look, this is not a glamorous case. This is not a—it's not all—there's [sic] no cameras here. There's no media attention to it. Right? And it may feel, like, okay, yeah, it sucked up a couple of days of our lives, and—but it's an important case.

Even though [there is] none of that here. It's an important case to [defendant]. And it's an important case to the People of the State of Michigan. And the reason is because we have an influx of drugs. The detective testified the street value has gone down substantially because of the influx of meth and prevalence of meth now in Kent County, because it's gotten here from other places. And it is destroying the community. It kills people. The testimony of the deputy was that he doesn't manipulate the drug baggies because he's taught not to because too many deputies and officers look at it and go—and they sniff it, and then they pass out or they get hurt because this stuff is dangerous. It is killing people.

And that is why the distinction here is so important, ladies and gentlemen, about whether somebody was just going to do this—possess it for themselves, or whether they were willing to give it to somebody else. So it is an important distinction and it's an important job that you have and I'm asking you [to] please consider that when you come out with your verdict.

Even if the prosecutor "inject[ed] issues broader than the guilt or innocence of the accused under the controlling law" or appealed to the social fears of the jury, see *Bahoda*, 448 Mich at 284 (quotation marks omitted), defendant would not be entitled to relief. Indeed, the evidence against defendant was overwhelming. The trial court instructed the members of the jury during the preliminary instructions that they were to base their verdicts "only on the evidence," which included the sworn testimony of witnesses, exhibits that were admitted into evidence, and "anything else [the trial court told the jury] to consider as evidence." After closing arguments, the trial court issued the following standard instruction: "Remember that you have taken an oath to return a true and just verdict, based only on the evidence and my instructions on the law. You must not let sympathy or prejudice influence your decision." The trial court again instructed the jury what constitutes evidence and that the attorneys' arguments are not evidence. Although, as defendant notes, the trial court instructed the jury that it should use its "own common sense and general knowledge in weighing and judging the evidence," the trial court also specifically instructed the members of the jury that they "should not use any personal knowledge [that they] may have about a person, place or event" and reiterated that the jury "must decide th[e] case based only on the evidence admitted during the course of . . . trial."

Accordingly, the jury was instructed at the beginning and end of trial that the jury was to base the verdict on the evidence presented at trial. Because "[i]t is axiomatic that jurors are presumed to have followed their instructions," *People v Gayheart*, 285 Mich App 202, 210; 776 NW2d 330 (2009), we conclude that defendant has failed to establish plain error affecting his substantial rights.

## 2. VOUCHING FOR DETECTIVE FOX'S CREDIBILITY

Next, defendant argues that the prosecutor improperly vouched for Detective Fox's credibility. We disagree.

"A prosecutor may not vouch for the credibility of [a] witness[] by suggesting that he [or she] has some special knowledge of the witnesses' truthfulness." *People v Seals*, 285 Mich App

-4-

1, 22; 776 NW2d 314 (2009). A prosecutor may, however, argue from the facts in evidence that a witness is worthy of belief. *Id*.

Defendant argues that the prosecutor made improper vouching arguments to the jury. During defendant's closing argument, defense counsel attacked Detective Fox's credibility and argued that no one knew what defendant had said to Detective Fox because the statements were not recorded. Defense counsel also argued that Detective Fox could have told defendant that he would "help [defendant] out if [defendant told him] about dealing," that Detective Fox asked leading questions, that Detective Fox pressured defendant, and that defendant may have made the statements because "he was ready to go home[.]" Defense counsel also implied that it was suspect that the digital scale was not discovered until after Detective Fox searched defendant and that it was odd that Deputy Hodges did not realize that the blue bag contained "multiple baggies[.]" In response to these arguments, the prosecutor argued on rebuttal as follows:

> [W]hat Detective Alex Fox did is he took an oath to tell you the truth about what he did that morning. He is—he has an established career with a very specialized branch of the Sheriff['s] Department. He has a reputation to uphold. There is the penalty of perjury if he lies. And believe me, he has much bigger fish to fry than to sit here and lie about a street-level drug dealer. Let's be real. I'm not saying he's this—he's this huge meth dealer. Right? With kilos and kilos of meth. He's a street level—street level dealer.

> Detective Fox is not going to come in here and lie about what happened in the conversation he had. It's just not going to happen. That testimony is under oath. And you have to establish whether it was credible or not. And I'm going to submit to you this, folks: When you have a confession, you have an amount—seven grams, which is triple what a user would—would use, you have six individually wrapped baggies with about a gram a piece in each one, that the defendant details he's going to sell at $100 denominations, when you have somebody who's got a scale, which a dealer is more likely to possess, when you've got somebody who admits to being unemployed, needing to make money, trying to make ends meet, who admits to dealing, and you put all those things together, it corroborates exactly what the defendant told this detective happened.

> And so I trust that your verdict will be guilty based on those—those facts.

We conclude that, when taken in context, the prosecutor's remarks were a proper response to defendant's theory of the case that Detective Fox's testimony was not credible, see *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004), and were proper credibility arguments, see *Dobek*, 274 Mich App at 66. Importantly, at no point did the prosecutor imply that he had special knowledge that Detective Fox was testifying truthfully. Rather, the prosecutor simply highlighted testimony that was properly elicited from Detective Fox concerning his employment history and training, and he argued that Detective Fox did not have a reason to lie. The prosecutor also briefly referenced the implications that committing perjury would have on Detective Fox and noted that Detective Fox's testimony was corroborated by other evidence.

Although the prosecutor argued that Detective Fox would not lie, the argument was immediately followed by the prosecutor's statement that it was the jury's responsibility to decide if Detective Fox was being truthful. Moreover, the jurors were instructed that the prosecutor's arguments were not evidence, that they were the only judges of the facts, and that they must decide which witnesses they believed. As already stated, jurors are presumed to follow their instructions. See *Gayheart*, 285 Mich App at 210. Thus, defendant has failed to establish plain error affecting his substantial rights.

## 3. CUMULATIVE ERROR

Finally, defendant argues in a cursory manner that both of the purported errors prejudiced him to the extent that a new trial is required. To the extent that defendant is attempting to argue cumulative error based on the prosecutor's alleged misconduct, defendant cites no authority in support of the argument, thereby rendering it waived. *People v Hanna*, 223 Mich App 466, 470; 567 NW2d 12 (1997). Nonetheless, to the extent that we have considered the argument, we conclude that defendant was not deprived of a fair trial. See *People v Ackerman*, 257 Mich App 434, 454; 669 NW2d 818 (2003).[3]

Affirmed.

/s/ Thomas C. Cameron
/s/ Michael J. Kelly
/s/ Douglas B. Shapiro

---

[3] We strongly caution the prosecutor to stay well clear of some of the statements that he made during his closing argument. The arguments invoking a civic-duty argument and vouching for the credibility of Detective Fox come very close to crossing the line and, in a future case where the evidence is different, such improper arguments could affect the outcome of a trial. Yet, because our standard of review is plain error and the evidence against defendant was overwhelming, any error in regard to the final argument was harmless.