*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ABBIEANA RENEKA-CAMEI WILLIAMS,

Defendant-Appellant.

UNPUBLISHED
April 11, 2024

No. 362305
Ingham Circuit Court
LC No. 20-000816-FC

Before: GADOLA, C.J., and BORRELLO and PATEL, JJ.

PER CURIAM.

Defendant appeals as of right her jury trial convictions of three counts of first-degree murder, MCL 750.316, and three counts of first-degree arson, MCL 750.72. Defendant was sentenced to concurrent terms of life imprisonment for each murder conviction and 18 to 50 years' imprisonment for each arson conviction, with credit for 629 days served. On appeal, defendant contends she was denied the effective assistance of counsel when counsel failed to object to improper testimony and inadmissible evidence. We affirm.

## I. FACTS

On September 3, 2020, Melissa Westen and her two young grandsons, Aston Griffin and Jesse Kline, died in an intentionally caused house fire in Melissa's home. Melissa's son, Mackenley, was in a relationship with defendant at the time. On the night of the fire, Mackenley was in Detroit with his brother Michael. When Mackenley passed out from drinking, his phone began to ring. Michael's wife Tara answered the phone and spoke to defendant, claiming to be a woman Mackenley was having an affair with to "mess with" defendant. Defendant then began sending threatening texts to Mackenley through Facebook messenger. Defendant sent messages stating, "I'm outside your mama's house…," and "I hope your mom likes being burned alive." At trial, Michael testified that he did not take these threats seriously because defendant had made similar threats in the past and did not act on them.

Defendant obtained a ride to Melissa's house from a friend of Mackenley's named Tyler Bradley. During the ride, defendant was angry, upset, and yelling on the phone. Defendant threatened "to throw a rock through [Mackenley's] mom's window," and stated, "I hope your

momma likes being burned alive." Bradley testified that he was surprised when he heard this, but "at the same time there had been a lot of threats in the past and they were all blank threats, so I didn't actually think anything was going to happen…." Bradley explained that defendant and Mackenley would frequently argue and threaten each other.

Thomas Skinner, Melissa's neighbor who also lived on Elizabeth Street, testified that he was sitting on his porch the evening of September 3, 2020, when he noticed a woman standing near the intersection of Elizabeth and Clifford Streets. At trial, Skinner identified this woman to be the defendant. Skinner watched defendant walk toward the intersection of Elizabeth and Lathrop, stop, turn around, and then walk back again three times. A video surveillance camera from a nearby house also captured defendant walking back and forth on Elizabeth Street shortly before the fire. Defendant then walked up to Skinner's porch and asked if he had a lighter. Skinner gave defendant a distinctive lighter that was later found in Mackenley's possession.

At trial, the defense's theory of the case was that the fire was accidentally caused by Melissa's lit cigarette. However, three different fire investigators concluded that the fire was intentionally set using an open flame directly below the front window of the home. One of the investigators determined that the window had been broken before the fire began, and that two pieces of brick were found in the debris that did not match any other bricks in the area.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that she received ineffective assistance of counsel because her attorney (1) elicited irrelevant, prejudicial testimony about defendant, (2) failed to object to a detective's speculative testimony regarding deletion of the Facebook messages, and (3) failed to object to the same detective providing a personal opinion regarding the surveillance videos. We disagree.

### A. STANDARD OF REVIEW

A defendant's right to the effective assistance of counsel is guaranteed by both the U.S. and Michigan Constitutions. US Const, Am VI; Const 1963, art 1, § 20; *Strickland v Washington*, 466 US 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Whether a defendant was denied the effective assistance of counsel is a mixed question of fact and constitutional law. *People v Posey*, 512 Mich 317, 332; 1 NW3d 101 (2023). Questions of fact are reviewed for clear error, while questions of law are reviewed de novo. *Id*. The trial court did not conduct an evidentiary hearing regarding defendant's claims, so we review defendant's ineffective assistance of counsel claims for errors apparent on the record. *People v Smith*, 336 Mich App 79, 100; 969 NW2d 548 (2021).

### B. DISCUSSION

In order for a defendant to prove ineffective assistance of counsel, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Yeager*, 511 Mich 478, 488; 999 NW2d 490 (2023) (citation omitted). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Id*. (citations omitted). "Generally, attorneys are given broad latitude to determine trial strategy, and

there is a strong presumption that counsel's performance was born from sound strategy." *Id*., quoting *Strickland*, 466 US at 689-690.

Defendant contends trial counsel was ineffective for eliciting prejudicial information from a witness for no strategic reason. The prosecution's first witness was Mariah Weston, the daughter of the victim Melissa Weston, and the mother of the two minor victims. On cross-examination, Mariah explained that defendant was not allowed at Melissa's home because defendant and Mackenley were caught having sex behind the house. While this testimony may have been unflattering, trial counsel used the testimony to suggest the family disliked defendant and were willing to blame her for the fire. This testimony also established that defendant was not unwelcome at Melissa's home because she was a threat. Multiple witnesses testified that defendant often made empty threats, therefore, it would have been out of character for defendant to follow through on one of her threats. While the jury ultimately did not believe this theory, it was not an objectively unreasonable strategy. See *Yeager*, 511 Mich at 488.

Defendant asserts that trial counsel's failure to adequately cross-examine the witnesses was so flagrant that "no prejudice need be shown." Under rare circumstances, prejudice may be presumed where counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing." *Bell v Cone*, 535 US 685, 696; 122 S Ct 1843; 152 L Ed 2d 914 (2002), quoting *United States v Cronic*, 466 US 648, 658-659; 104 S Ct 2039; 80 L Ed 2d 657 (1984). But the "attorney's failure must be complete." *Id*. at 697. Here, defendant asserts that her counsel failed to oppose the prosecution's case at certain points, not that her counsel wholly failed to test the prosecution's case at all. The record clearly shows that trial counsel vigorously cross-examined witnesses, obtained concessions from fire investigators that a cigarette could have caused the fire, and significantly impeached testimony regarding a prior threat allegedly made by defendant. The presumption of prejudice only applies if counsel totally fails to subject the prosecution's case to any opposition whatsoever. *Bell*, 535 US at 697. That is not the case here.

Defendant also asserts that counsel was ineffective for failing to object when the prosecutor asked Bradley if he ever saw defendant acting jealous. Defendant contends there was "insufficient foundation for [Bradley] to opine on her emotions or emotional state…." However, this question was proper because it was based on the witness's first-hand observations. Bradley responded that he had not seen defendant act jealous "until that night," and he denied ever seeing defendant upset about her boyfriend's whereabouts. This testimony was not improper and was arguably helpful to the defense. Therefore, there was no reason for trial counsel to object. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) (failing to raise a futile objection does not constitute ineffective assistance of counsel).

Defendant argues that Detective Mironiuk's testimony was improper, and defense counsel was ineffective for failing to object. Defendant contends that Detective Mironiuk was allowed to speculate as to why the Facebook messages could not be recovered, and was allowed to provide a personal opinion as to her impression of the surveillance video. Detective Mironiuk testified that defendant was cooperative in an interview with police; defendant admitted sending the threats over Facebook messenger but denied acting on them. The police saved screenshots of the messages, but when they subpoenaed Facebook for the original records, the messages no longer existed. Defendant takes issue with the following exchange between the prosecutor and Detective Mironiuk:

*Q*. Now, as a detective, what's your reasonable conclusion as to what occurred with those Facebook messages?

*A*. That they were deleted prior to the preservation.

*Q*. All right. And fair enough, you can't tell us whether it was Abbieana that deleted them, Mackenley, or somebody else who may have had access to those Facebook accounts; correct?

*A*. That's correct.

Defendant contends this exchange made it obvious that the prosecution wanted the jury to believe the defendant deleted the messages. However, that is clearly not the answer the detective gave, and the prosecutor clarified that the detective did not know exactly who deleted the messages. Further, defendant had already admitted to police that she sent the messages, so the issue as to who deleted the messages was not material. Because the detective's testimony was not speculative, defense counsel was not ineffective for failing to raise an objection.

As to the surveillance videos, Detective Mironiuk explained the videos were relevant to the investigation because they show "who [she] believe[s] is the person who started the fire." Defendant contends this was improper opinion testimony. A lay witness may provide opinion testimony if it is (1) rationally based on the witness's perception, and (2) helpful to clearly understanding the witness's testimony or to determining a fact in issue. MRE 701. The opinion also must not invade the province of the jury. See *People v Fomby*, 300 Mich App 46, 52; 831 NW2d 887 (2013). A lay opinion regarding video evidence does not invade the province of the jury if the witness is in a better position to make an identification from the video, but "a witness cannot express an opinion on the defendant's guilt or innocence of the charged offense." *Id*. at 52-53 (quotation marks and citation omitted). Nevertheless, pursuant to MRE 704, lay opinion testimony is not objectionable just because it encompasses an ultimate issue that the trier of fact must decide. Detective Mironiuk testified that the video showed the person who started the fire. She did not identify defendant as the person in the video. The detective's opinion was based on her perception of the video, helpful to the jury, and not invasive of the province of the jury. Trial counsel, therefore, had no basis to object. See *Ericksen*, 288 Mich App at 201. We conclude that defendant did not receive ineffective assistance of counsel.

## III. OTHER-ACTS EVIDENCE

Defendant argues that the trial court erred by admitting other-acts evidence because the prosecution failed to prove by substantial evidence that defendant actually committed the acts in question. We disagree.

## A. STANDARD OF REVIEW

A trial court's decision whether to admit evidence is reviewed for an abuse of discretion. *People v Denson*, 500 Mich 385, 396; 902 NW2d 306 (2017). An abuse of discretion occurs when a trial court's decision falls outside the range of reasonable and principled outcomes. People v Franklin, 500 Mich 92, 100; 894 NW2d 561 (2017). But "whether a rule or statute precludes

admission of evidence is a preliminary question of law that this Court reviews de novo." *Denson*, 500 Mich at 396. "When we find error in the admission of evidence, a preserved nonconstitutional error is presumed not to be a ground for reversal unless it appears that, more probably than not, it was outcome determinative – i.e., that it undermined the reliability of the verdict." *Id*. (quotation marks and citations omitted).

## B. DISCUSSION

Material evidence of any other crime, wrong, or act may be admissible under MRE 404(b) if it is relevant for a purpose other than proving "the defendant's character or criminal propensity." *People v Spaulding*, 332 Mich App 638, 649; 957 NW2d 843 (2020) (quotation marks and citation omitted). MRE 404(b) provides that evidence of other crimes, wrongs, or acts, may be admissible to prove "motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, absence of mistake, or lack of accident." But of course, such evidence may be excluded under MRE 403 if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *Spaulding*, 332 Mich App at 650. And there must be substantial evidence that the defendant actually perpetrated the bad act sought to be introduced. *People v Smith*, 243 Mich App 657, 670; 625 NW2d 46 (2000).

In this case, the prosecution properly filed a notice of intent to admit other-acts evidence before trial, as required by MRE 404(b)(3). The prosecution intended to admit evidence that defendant previously set fires at her own home on August 2, 2020, a month before the fire at issue here. Police were called to defendant's home on a report of a woman intentionally starting three small fires. The notice claimed that the prosecutor intended to use the evidence for proving defendant's "motive, intent, system in doing an act, identity, and absence of mistake or accident." Defendant objected to the evidence, but the trial court found it was admissible. At trial, the prosecutor had three witnesses testify as to the events that occurred on August 2, 2020. The first witness, THB, testified that she was visiting with defendant and Mackenley when defendant suddenly became upset and jealous that THB and Mackenley were laughing together. Defendant left the home in anger, and THB soon smelled something burning. Mackenley opened the door and THB saw a fire directly outside the door. Mackenley subsequently put the fire out but defendant was "[j]ust sittin' there watchin' with her arms folded." The second witness was a neighbor who saw defendant start a fire and called the police. A third police witness testified to the events that occurred once he arrived at the residence.

Defendant argues that the testimony did not amount to substantial evidence that defendant actually perpetrated the other fires, and the "commonality" between the charged act and the other acts was insufficient. While defendant is correct that there must be substantial evidence that defendant actually perpetrated the bad act before that evidence is admitted, "there need not be evidence that proves beyond a reasonable doubt that the defendant committed the other bad act." *Smith*, 243 Mich App at 670-671. Here, an eyewitnesse testified they saw defendant start the fires, and a police witness testified that he responded to the scene and used a fire extinguisher to put the fire out. Further, the trial court played the 911 call from the neighbor, and admitted photos of the scene taken by the police officer. This constitutes substantial evidence that defendant in fact committed the other act of intentionally setting fires, and no further evidence was required.

As to the purpose of this evidence, it is clear that in both instances, defendant suspected her boyfriend was cheating on her and exhibited jealousy and rage. In both instances, the defendant set dwellings on fire without regard for whether people were inside, which strongly indicates motive and absence of mistake or accident. At trial, the defense contended that the fire was set by an unattended cigarette. The prosecution used this other-acts evidence to rebut that inference and establish the motive that because defendant was angry with her boyfriend she set his mother's house on fire. It also shows a particular system; specifically, burning (or attempting to burn) down an occupied house as a form of retaliation against someone other than the occupants of the house. Lastly, the trial court instructed the jury on the proper use of the evidence. Therefore, the evidence was properly admitted.

## IV. VICTIM PHOTOGRAPHS

Before trial, defendant moved to suppress three photographs of the victims' bodies, arguing they were irrelevant and unfairly prejudicial. The trial court granted the motion as to one photo but allowed the other two to be admitted. On appeal, defendant maintains the photos were unfairly prejudicial and irrelevant to any fact or element in issue. We disagree.

"A decision whether to admit photographs is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion." *People v Head*, 323 Mich App 526, 539-540; 917 NW2d 752 (2018). "Photographic evidence is generally admissible as long as it is relevant, MRE 401, and not unduly prejudicial, MRE 403." *People v Gayheart*, 285 Mich App 202, 227; 776 NW2d 330 (2009) (citation omitted). Photographs may be admissible to corroborate witness testimony, and they are not excludable merely because they are cumulative or gruesome. *Id*. at 227-228. Shocking or gruesome photographs should be excluded if they are "merely calculated to arouse the sympathies or prejudices of the jury." *People v Brown*, 326 Mich App 185, 194; 926 NW2d 879 (2018), amended in part on other grounds 328 Mich App 801 (2019).

One photo depicts two of the victims as they were found in the bathtub, and the other photo depicts the third victim as he was found in a corner. Both show the context in which the victims were found: in a badly burned bathroom covered in soot. Importantly, notwithstanding defendant's contention on appeal that the only fact at issue was the identity of the person who set the fire, the defense cast doubt on whether the fire had been intentional rather than accidentally caused by a cigarette. Defendant was able to obtain concessions from the fire investigators that it was possible for a lit cigarette to cause a fire, but they emphasized that such a fire would be slow and smoldering, likely permitting occupants to escape. The fact that the victims were not able to escape was highly probative to support the expert testimony that the fire was very hot and very fast-moving—thereby helping rule out the possibility that Melissa's lit cigarette caused the fire. Furthermore, the photographs were relevant to corroborate testimony describing the manner of the victims' deaths and the context in which their bodies were found, and the two photographs were the minimum necessary to establish that context. The trial court did not abuse its discretion.

## V. ATTORNEY FEES

Defendant challenges the trial court's imposition of $2,000 in attorney fees. Defendant asserts the trial court did not have authority to impose this cost. We disagree.

Questions of statutory interpretation are questions of law that this Court reviews de novo. *People v Lewis*, 503 Mich 162, 165; 926 NW2d 796 (2018). "[F]indings of fact on which the trial court bases an award of attorney fees are reviewed for clear error." *Richards v Richards*, 310 Mich App 683, 700; 874 NW2d 704 (2015) (citation omitted). "A finding is clearly erroneous if we are left with a definite and firm conviction that a mistake has been made." *Id*. (citation omitted).

Defendant was found indigent in district court and was appointed an attorney at public expense. The public defender represented defendant throughout a six-day trial. At sentencing, the trial court imposed $2,000 of attorney fees. Defendant filed a postconviction motion to correct an invalid sentence, which included an argument that the attorney fees imposed were improper. During the hearing on the motion, the trial judge explained:

> The amount I set here I know was drastically below whatever they incurred in their costs in this matter. This was a lengthy trial. They had a lot of work on it. But they never submitted to me a total statement of what their estimated… fees based on whatever rate they charge.
>
> So, you know I've picked a rate–I picked a rate that I felt was representatively fair. So I probably would estimate they probably had $15,000 to $20,000 worth in the case, so I set it at a lower rate.

Defendant argues that the trial court does not have statutory authority to impose attorney fees in light of the Michigan Indigent Defense Commission Act (MIDCA), MCL 780.981 *et sq*.

If a defendant requests a lawyer and claims she cannot afford one, "the court must determine whether the defendant is indigent unless the court's local funding unit has designated an appointing authority in its compliance plan with the Michigan Indigent Defense Commission. If there is an appointing authority, the court must refer the defendant to the appointing authority for indigency screening." MCR 6.005(B). "A trial court may require a convicted felon to pay costs only where such requirement is expressly authorized by statute." *People v Lloyd*, 284 Mich App 703, 707; 774 NW2d 347 (2009) (citation omitted). MCL 769.1k(1)(b)(iv) provides that trial courts may impose costs including "[t]he expenses of providing legal assistance to the defendant." This statute pre-dates the MIDCA, which created the Michigan Indigent Defense Commission (MIDC). The MIDC establishes minimum standards to guarantee the right of indigent defendants to the assistance of counsel. MCL 780.991(2). "The court shall collect contribution or reimbursement from individuals determined to be partially indigent under applicable court rules and statutes." MCL 780.993(17). While defendant argues the two statutory mandates found in MCL 769.1k(1)(b)(iv) and MCL 780.993(17) are in conflict, and the MIDCA should apply, we hold that these statutes can be read together such that a trial court can impose attorney fees pursuant to its authority in MCL 769.1k(1)(b)(iv).

MCL 769.1k(1)(b) speaks in terms of what the court *may* impose, whereas MCL 780.993(17) speaks in terms of what the court *shall* do. "Shall" is mandatory, while "may" is permissive. See *Walters v Nadell*, 481 Mich 377, 383; 751 NW2d 431 (2008). The requirement that a court shall collect reimbursement from a partially indigent defendant under the MIDCA does not mean the court *cannot also* impose attorney costs on the same defendant pursuant to MCL 769.1k(1)(b)(*iv*) without regard to the defendant's indigency. In any event, both statutory sections

authorize trial courts to recover some measure of attorney fees from criminal defendants, which supports that they are not in conflict. Because it is possible to harmonize MCL 769.1k(1)(b)(*iv*) and the MIDCA, this Court cannot conclude that MCL 769.1k(1)(b)(*iv*) was repealed by implication. See *Int'l Business Machines Corp v Dep't of Treasury*, 496 Mich 642, 651-652; 852 NW2d 865 (2014) (in most circumstances, we presume that if the Legislature had intended to repeal a statute, it would have done so explicitly).

The trial court's factual findings regarding the amount of costs imposed were minimal but sufficient. The court selected a rate that it believed "was representatively fair," although it did not articulate what that rate was, and it estimated that the real cost of defendant's defense was somewhere between $15,000 to $20,000, intentionally choosing an amount "drastically below" that. The trial court reflected on the length of trial and the amount of work the case required. Because we are not left with a definite and firm conviction that a mistake has been made, the trial court did not clearly err in imposing $2,000 in attorney fees. Under the circumstances, we find the trial court's factual findings adequate.

Affirmed.

/s/ Michael F. Gadola
/s/ Stephen L. Borrello
/s/ Sima G. Patel